*MCB Woodberry Developer, LLC v. The Council of Unit Owners of the Millrace Condominium, Inc., et al.*, No. 1187, September Term 2020.
Opinion by Harrell, J.

**CIVIL IMMUNITY – ANTI-SLAPP STATUTE –** Developer did not state a plausible claim that the residents of a condominium and townhouse development and their homeowners' associations violated the community declaration by opposing actions by the developer to modify the planned unit development. Md. Code Ann., Cts. & Jud. Proc. § 5-807(b)(2) & (3).

**CIVIL IMMUNITY – ANTI-SLAPP STATUTE –** Communications by residents of condominium and townhouse developments and their homeowners' associations made to the public, elected representatives, the Baltimore City Planning Commission, and the Circuit Court for Baltimore City relative to proposed minor amendments to a planned unit development were on a matter within the authority of a government body and on an issue of public concern. Md. Code Ann., Cts. & Jud. Proc. § 5-807(b)(1).

**CIVIL IMMUNITY – ANTI-SLAPP STATUTE –** Bad faith under the Anti-SLAPP statute has the same meaning as under Md. Rule 1-341, the pursuit of litigation vexatiously for the purpose of harassment or unreasonable delay, or for other improper reasons. Md. Code Ann., Cts. & Jud. Proc. § 5-807(b)(1); Md. Rule 1-341.

**CIVIL IMMUNITY – ANTI-SLAPP STATUTE** – The structure of the Anti-SLAPP statute envisions that, in the appropriate case, bad faith may be decided upon a preliminary motion to dismiss. The facts as alleged in developer's complaint, coupled with facts that were appropriate for judicial notice, established that the developer filed the complaint for the improper purpose of deterring the residents and their homeowners' associations from engaging in protected communications in opposition to development, which is bad faith. Md. Code Ann., Cts. & Jud. Proc. § 5-807(b)(1) & (d).

**CIVIL IMMUNITY – ANTI-SLAPP STATUTE** – The developer did not allege any facts showing that the residents acted with constitutional malice in making any communications. Md. Code Ann., Cts. & Jud. Proc. § 5-807(c).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1187

September Term, 2020

_____

MCB WOODBERRY DEVELOPER, LLC

v.

THE COUNCIL OF OWNERS OF THE
MILLRACE CONDOMINIUM, INC.

_____

Shaw Geter,
Zic,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed:  December 16, 2021

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

*Arthur, Kevin F., J., did not participate in the
Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

A near-mass extinction event, involving a large impact with the Earth by an asteroid, occurred some 65 million years ago (the Cretaceous-Paleogene extinction event). The effects of the impact resulted in the loss of three-quarters of all animal and plant life on our planet at the time.

The figurative litigation "asteroid" at the heart of the present case requires us to interpret and apply Maryland's Strategic Lawsuits Against Public Participation statute (sometimes referred to as the "Anti-SLAPP" statute), Md. Code, Cts. & Jud. Proc. ("CJP"), § 5-807. In sum, the Anti-SLAPP statute aims to remedy the fall-out from the unwarranted maintenance of litigation launched to deter, punish or intimidate efforts at critical public comment and participation in governmental proceedings involving the suit-bringer's interests. Thus, metaphorically, the wrongfully-brought litigation, within the scope of the statute, is akin to a "killer asteroid" intended to make extinct the complaints and complainants opposing the plaintiff's initiatives that require governmental approval.

VS Clipper Mill, LLC ("VS"), a real property development business in Baltimore City was the developer of a project known as the Clipper Mill Planned Unit Development ("the PUD").[1] VS sought approval from the Baltimore City Planning Commission ("the Planning Commission") for proposed changes to the previously approved PUD plan in

---

[1] Pursuant to Md. Rules 8-401(b) and 2-241, VS filed with this Court on 20 October 2021 a Notice of Substitution of Party, naming MCB Woodberry Developer, LLC ("MCB"), as VS's successor as appellant in this litigation (which had been maintained solely by VS to that point). No opposition to this Notice was filed. Consequently, we have re-captioned the case with MCB as appellant; however, we shall refer throughout this opinion to VS, as appropriate to context, for consistency and clarity in our narrative.

order to allow it to construct additional townhomes on land committed previously to surface vehicular parking and to redevelop an existing building for office and retail use. Residents from two existing residential communities within the PUD opposed those efforts, individually and through their homeowners' associations. VS responded by filing the instant lawsuit in the Circuit Court for Baltimore City against the Council of Unit Owners of the Millrace Condominium, Inc. ("Millrace Council") and three of its board members,[2] and The Homes at Clipper Mill Homeowners' Association, Inc. ("Clipper Mill HOA") and two of its board members[3] (collectively "the HOA parties"), alleging that their opposition to the proposed changes to the PUD plan contravened the Clipper Mill Community Declaration and interfered tortiously with VS's business and economic relations, entitling VS to compensatory damages, $25 million in punitive damages, and declaratory relief.

The HOA parties moved to dismiss the lawsuit, arguing that they were immune civilly for their protected communications with government bodies under the Anti-SLAPP statute. Following a hearing, the circuit court granted the HOA parties' motions to dismiss, ruling that the lawsuit was a prohibited SLAPP suit. VS appeals, asking solely:

> I. Did the circuit court err by dismissing with prejudice VS's complaint under the Anti-SLAPP statute?

---

[2] The Millrace board members are Jessica Meyer, Jared Block, and Dan Cashman. Ms. Meyer does not own a unit in Millrace, but resides there.

[3] The Homes at Clipper Mill board members are Jeffrey Pietrzak and Margo Halle.

2

"No" is our answer to that question and, accordingly, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

In 2003, the Baltimore City Council approved the PUD,[4] authorizing the redevelopment of a 17.3 acre abandoned industrial site along the Jones Falls for a mixed-use community comprising residential, retail, and office space. The Millrace, a residential condominium, and The Homes at Clipper Mill, a residential community of townhomes and duplex dwelling units, were developed in the early stages of the PUD. The Millrace Condominium Declaration, recorded among the Land Records of Baltimore City ("Land Records") on 18 November 2005, created the Millrace Council, which governs the affairs of the Millrace. The Homes at Clipper Mill Declaration of Covenants, Conditions and Restrictions, recorded in the Land Records on the same date, created the Clipper Mill HOA, which governs the affairs of The Homes at Clipper Mill.

Five years after those declarations were recorded, the Clipper Mill Community Declaration ("Community Declaration") was recorded in the Land Records. It incorporated joinder agreements executed by the Millrace Council and the Clipper Mill HOA, agreeing that any "right, title, and interest" in real property within the Clipper Mill

---

[4] A PUD is a type of "floating zone," which reflects "a local legislative response to the relative rigidity of Euclidian zoning[.]" *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 515 (2015) (citing *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 539 n. 15 (2002)). "A distinguishing feature of PUDs is the incorporation of a form of site planning requirement at its inception and/or in the latter stages of the overall approval process, if that process is multi-tiered." *Maryland Overpak Corp. v. Mayor & City Council of Baltimore*, 395 Md. 16, 22 n. 4 (2006).

development would be held subject to the declaration and subordinating the earlier declarations to the Community Declaration. The Community Declaration established easements, covenants, and community assessments, and defined the common areas of the development.

Section 4 of the Community Declaration created the Clipper Mill Association, a nonstock corporation, to levy, collect, and apply community assessments, maintain common areas, improvements, and facilities, and administer and enforce covenants and easements. Voting rights within that association were allocated to the residential communities and to the developer, based upon the percentage of ownership. Consequently, VS, which owned most of the real property within the PUD, controlled 71% of the votes at the time this litigation was commenced.

Subsection 4.9 of the Community Declaration provides:

Litigation. Anything in this Community Declaration or the other Clipper Mill Documents to the contrary notwithstanding, neither Clipper Mill Association nor any Person acting or purporting to act on its behalf shall (a) file any (i) civil, criminal or administrative proceeding in or with any court or administrative body or officer, or (ii) appeal of or objection to any decision or other action made or taken by any court, administrative body or officer, in any judicial or administrative proceeding, or (b) testify or submit evidence (unless required by Applicable Law, subpoena or formal order of the court, administrative body or officer), or otherwise take a formal position on any issue under consideration, in any such proceeding or appeal, in all cases until the action is approved in writing by, or by the Votes of Voters holding at least 75 percent of the Total Qualified Votes held by all Voting Members. Nothing in this subsection shall apply to a civil or administrative proceeding which Clipper Mill Association files to collect a Community Assessment or Assessment Installment, or enforce or foreclose an Assessment Lien or Clipper Mill Association's rights or another Person's obligations under the Clipper Mill Documents, due to a Default or otherwise as more fully set forth in this Community Declaration.

4

Section 5 of the Community Declaration governs "Property Rights" and provides, at subsection 5.3.2, which falls under a subsection governing "Control of Community Common Areas[,]":

> Interference with development. Clipper Mill Association shall not, in its management and control of a Community Common Area or otherwise, take any action which prohibits, impairs, delays, or makes more expensive Developer's (a) subdivision or development of any of Clipper Mill or other real property in accordance with a preliminary subdivision plan, site development plan or other plan approved by the City, or (b) performance of its obligations under any public works or other agreement with an Authority, the Subdivision or Zoning Laws, other Applicable Law or otherwise, arising in connection with that subdivision or development.

In 2017, VS purchased the PUD. It "began the process of applying for a minor amendment . . . to the PUD" to allow it to construct thirty townhomes "on a vacant lot located within the development" ("the Townhome Project"). VS proposed also a so-called "minor amendment" to the PUD to allow it to convert the existing "Tractor Building" to a mixed-use project to include 98 residences, 19,000 square feet of office space, 106 parking spaces on two levels, and a separate 75-space parking garage ("the Tractor Building Project") (collectively "the Projects"). Under Baltimore's zoning ordinance, codified at Article 32 of the Baltimore City Code (hereinafter "BCZO"),[5] a "Minor Change" to a PUD may be approved by the Planning Commission, but a "Major

---

[5] In 2016, Baltimore City enacted comprehensive rezoning legislation known as "Transform Baltimore." *Floyd v. Baltimore City Council*, 241 Md. App. 199, 203 (2019). The PUD was "grandfathered" into the new zoning ordinance, subject to "Transition rules." BCZO §§ 2-203(h) & 13-102. As pertinent, amendments to a PUD that predated the new zoning code would be "categorized as either engineering corrections, minor changes, or major changes in accordance with Subtitle 4 {'Modifications to approved final development plans'} of this [Title 13 of the BCZO]" subject to "the corresponding approval procedure." BCZO § 13-102(b).

5

Change"[6] "requires introduction and enactment of an ordinance [by the City Council] to approve an amendment to the [PUD] and PUD master plan." BCZO §§ 13-402-13-403.

The HOA parties organized to oppose the Projects, taking the position that the proposed changes amounted to major changes to the PUD that required approval by the Baltimore City Council, not just the Planning Commission. They opposed the Projects at meetings of the Planning Commission on 14 November 2019 and 18 June 2020, respectively, submitting letters, testifying, and making a presentation on behalf of the two HOAs. After the Planning Commission voted unanimously to approve the minor amendment relative to the Townhouse Project, the HOA parties filed a petition for administrative mandamus in the circuit court. *See In re The Petition of the Council of Unit Owners of the Millrace Condominium, et al.*, No. 24-C-19-006602.

On 25 June 2020, the circuit court held a hearing on the petition for administrative mandamus, declined to reach the merits, and issued a limited remand to the Planning Commission for it to make findings of fact and conclusions of law in support of its decision.[7]

---

[6] A "Major Change" includes a 10% increase "in the approved number of dwelling units[,]" a "change in the type, location, or arrangement of land use within the development, as shown on the previously approved final development plan[,]" a change in "the boundaries of the [PUD,]" and "any change . . . that violates . . . a condition of approval attached to the [PUD] . . . or . . . a provision of the ordinance that approved . . . the [PUD]." BCZO § 13-403(a).

[7] On remand, the Planning Commission made the required findings of fact and conclusions of law and reaffirmed its earlier ruling that the changes to the PUD were, in its view, minor. The circuit court held thereafter a hearing on the merits of the petition for administrative mandamus and affirmed the decision of the Planning Commission.

(Continued…)

6

Four days later, on 29 June 2020, VS filed the lawsuit that commenced the present case, asserting claims for breach of contract, tortious interference with economic relations, civil conspiracy to interfere tortiously, and for declaratory relief. It alleged that the HOA parties were "legally precluded from taking any action to obstruct or delay" the development efforts by section 4.9 of the Community Declaration because the HOA parties controlled only 200 of the 700 votes allocated to the Clipper Mill Association members, making it "mathematically [impossible to] achieve the 75 percent threshold" to "undertake any action to oppose [VS's] efforts relating to the zoning, development or improvement of any property owned by [VS] within the Clipper Mill Development." Despite that alleged prohibition, the HOA parties created "fictitious and subversive associations to oppose VS['s] development efforts" and published "false and misleading information about VS . . . and its development efforts." They also took the following actions to thwart VS's efforts to pursue the Projects:

- "Organized a campaign of letter writing, emailing and other public opposition to the development [of the Projects]";

- "Engaged counsel to file legal objections to the [Projects]";

- "Solicited local politicians to oppose the development of the [Projects]";

The HOA parties noted an appeal from that ruling, which was submitted on brief in this Court during the December session of this year. *See The Council of Unit Owners of The Millrace Condominium, et al. v. City Planning Comm'n, et al.*, No. 131, Sept. Term 2021.

A second administrative appeal arising from the Planning Commission's approval of a minor amendment to the PUD in the Tractor Building Project is pending also in this Court. *See In re The Petition of the Council of Unit Owners of The Millrace Condominium, et al.*, No. 959, Sept. Term 2021. It has not been briefed yet.

7

- "Filed objections to the proposed development of the [Projects] . . . with the Baltimore City Planning Commission";

- "Appeared individually, through correspondence and through counsel, at a hearing before the Baltimore City Planning Commission and presented testimony, documents, and arguments opposing . . . VS Clipper Mill's development efforts [for the Projects] — including a presentation made on behalf of the Millrace Council and the Clipper Mill HOA and testimony by [Defendants Meyer, Block, and Pietrzak] at [hearings] before the Baltimore City Planning Commission on [14 November 2019 and 18 June 2020]"; and

- "Otherwise acted in an unlawful, wrongful and malicious manner in an effort to obstruct, impair and delay . . . VS Clipper Mill's development efforts, and to make VS Clipper Mill's development more expensive, in violation of their obligations under the Community Declaration and the Subordinate Declarations."

In support of its tort counts and related request for $25 million in punitive damages, VS alleged that the HOA parties undertook these actions "knowingly . . . for the unlawful purpose of obstructing, impairing, delaying and making VS['s] development efforts more expensive" and wrongfully in an attempt to "strong arm VS . . . and force it to make concessions" related to parking within the development. It alleged that this wrongful intent was evidenced by an email "exchange" between Ms. Meyer and a former resident of the Millrace, in which the former resident related to Ms. Meyer that, if VS "would come to the table and reasonably handle the parking situation[,]" he would support the Tractor Building Project. He suggested that most community members were opposing that Project as a "ploy to try to get [VS] to buzz off."

VS alleged that it had been damaged by the HOA parties' actions because they delayed final approval of the proposed amendments to the PUD, causing loss of investment income, additional carrying costs, loss of use of the land, and attorneys' fees

8

and costs associated with defending against the HOA parties' administrative appeals. It asked the court to enter a declaratory judgment determining, *inter alia*, that the HOA parties are bound by the Community Declaration and that they are prohibited by it "from taking any action challenging the zoning, development or improvement of the Clipper Mill Development except through the Clipper Mill Association, which has the sole and exclusive authority to act on such matters[.]"

Ten days after it filed its complaint, VS served on the individual HOA parties its first request for production, which directed them to produce all documents included in an earlier preservation request, as well as their personal banking records from January 2015 to the present. The earlier preservation request, dated 20 May 2020, directed the HOA parties to preserve all electronically stored information on personal and business devices, including phones, laptops, and tablets, for potential discovery.

The HOA parties moved to dismiss the complaint arguing that it was a SLAPP suit and that they were immune from suit for their protected communications pursuant to CJP § 5-807.[8] They emphasized that the conduct that VS alleged was unlawful all concerned the HOA parties' public participation in opposition to VS's efforts to amend the PUD before the Planning Commission and the circuit court, which was protected activity under the First Amendment. The HOA parties maintained that the timing of the filing of the

---

[8] The Clipper Mill HOA and its board members, Mr. Pietrzak and Ms. Halle, filed one motion to dismiss and the Millrace Council and its board members, Ms. Meyers, Mr. Block, and Mr. Cashman, filed a separate motion to dismiss. Except for an argument relative to Ms. Meyers' status as a non-owner resident of the Millrace, the HOA parties made the same arguments for dismissal. The circuit court did not distinguish between the parties in ruling on the motions to dismiss.

lawsuit, just four days after the circuit court issued its remand order in the Townhouse Project administrative appeal, coupled with the demand for punitive damages and "onerous, overbroad, and intentionally intrusive discovery requests[,]" exemplified bad faith and justified dismissal of the complaint. In addition, they asserted that VS had not pleaded any facts showing that the HOA parties made any statements about VS or the Projects with "constitutional malice." The HOA parties rejected the proposition that they breached the Community Declaration by their conduct, arguing that the declaration only restricted actions taken "on behalf" of the Clipper Mill Association and that none of the HOA parties held themselves out as acting on behalf of that entity. In any event, if the construction of § 4.9 of the Community Declaration advanced by VS was correct, that provision should be struck down as unconscionable and a violation of Maryland public policy.

VS opposed the motions to dismiss, arguing that the HOA parties asserted "fact-dependent defenses" that were inappropriate for resolution on a preliminary motion to dismiss. It relied upon several unreported decisions issued by the United States District Court for the District of Maryland denying motions to dismiss under the Anti-SLAPP statute.[9]

---

[9] This Court announced recently that it is "no longer [our] policy to prohibit the citation of unreported opinions of federal courts or the courts of other states for persuasive value, provided that the jurisdiction that issued any particular opinion would permit it to be cited for that purpose." *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 252 Md. App. 342, 352-53 n.6 (2021), *cert. granted*, __ Md. __ (13 Sept. 2021). Federal Rule of Appellate Procedure 32.1 prohibits any federal court from restricting the citation of any unpublished federal judicial opinion issued after 1 January 2007.

10

The circuit court held a hearing and, by order entered 23 November 2020, granted the motions to dismiss. It ruled that the lawsuit was a SLAPP suit, that the Community Declaration did not prohibit the HOA parties' conduct, and that the HOA parties were immune civilly from suit for their protected communications made in opposition to the Projects. We shall present the court's specific findings in our discussion of the question presented.

This timely appeal by VS followed. As noted earlier at (slip op. at 1, n.1) MCB was substituted for VS as appellant for purposes of this appeal.

## STANDARD OF REVIEW

When deciding whether to grant a motion to dismiss a complaint as a matter of law, a court must assume the truth of well-pleaded factual allegations made in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff. *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017). "Mere conclusory charges that are not factual allegations need not be considered." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335 (2009) (citation omitted). We review the circuit court's decision without deference. *Lamson v. Montgomery Cnty.*, 460 Md. 349, 360 (2018).

## DISCUSSION

"Generally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). The quintessential SLAPP suit is "directed at individual citizens of modest means

11

for speaking publicly against development projects." *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940 (Mass. 1998); *Town of Madawaska v. Cayer*, 103 A.3d 547, 551 (Me. 2014) (explaining that "zoning disputes make up many of the classic anti-SLAPP cases, . . . [occurring typically] when citizens who publicly oppose development projects are sued by companies or other citizens"). SLAPP suits "are by definition meritless suits." *Duracraft*, 691 N.E.2d at 935 (quotations and citation omitted).

## A. Maryland's Anti-SLAPP Statute

In 2004, the General Assembly enacted CJP § 5-807 to "protect individuals and groups, many with few assets, from defending costly legal challenges to their lawful exercise of such constitutionally protected rights as free speech, assembly, and the right to petition the government." Dep't Legislative Servs., *Fiscal and Policy Note, House Bill 930*, at 2 (2004 Session) (hereinafter cited as "*HB 930 Fiscal Note*"). In doing so, Maryland joined at least 20 other states with Anti-SLAPP laws in place. *HB 930 Fiscal Note* at 2.

Codified within Title 5, Subtitle 8 of the Courts and Judicial Proceedings Article, governing miscellaneous "Immunities and Prohibited Actions," the statute defines a lawsuit as a SLAPP suit if it meets these criteria:

> (1) Brought in bad faith against a party who has communicated with a federal, State, or local government body or the public at large to report on, comment on, rule on, challenge, oppose, or in any other way exercise rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body or any issue of public concern;
>
> (2) Materially related to the defendant's communication; and

12

(3) Intended to inhibit or inhibits the exercise of rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights.

CJP § 5-807(b).  In sum, the statutory thresholds for such a lawsuit require that it be 1) brought in bad faith, 2) brought against a party who has made protected communications to a government body or the public on a matter within the authority of government body *or* on an issue of public concern, 3) materially related to the protected communications, and 4) intended to inhibit or to have inhibited the making of those protected communications.  If all four criteria are satisfied, then the defendant is entitled to civil immunity if he or she acted "without constitutional malice" when making the protected communications.  CJP § 5-807(c).

The Anti-SLAPP statute provides two particular procedural options for responding to an alleged SLAPP suit:

(d) A defendant in an alleged SLAPP suit may move to:

(1) Dismiss the alleged SLAPP suit, in which case the court shall hold a hearing on the motion to dismiss as soon as practicable; or

(2) Stay all court proceedings until the matter about which the defendant communicated to the government body or the public at large is resolved.

CJP § 5-807(d).[10]

---

[10] During the 2010 regular session, the General Assembly considered, but rejected, proposed amendments to subsection (d) of the Anti-SLAPP statute.  *See* SB 990 (2010 Regular Session), Rejected Amendment to SB 990, 04/10/2010, 228373/01.  Those amendments proposed eliminating the motion to stay provision and modifying the motion to dismiss provision to allocate the burdens of proof and specify the evidence that a court

(Continued…)

To date, neither this Court nor the Court of Appeals has had occasion to construe the provisions of the Anti-SLAPP statute in a reported opinion.

## B. Contentions of Error

MCB contends exclusively that the circuit court "misappli[ed] . . . the standard of review" applicable to a motion to dismiss for failure to state a claim upon which relief may be granted and erred in four specific ways in granting the motion. First, it argues that the circuit court should not have determined the element of "bad faith" on a motion to dismiss because it is a factual question that turns, in part, upon the subjective motivation of the plaintiff and, even if that issue could be decided on a preliminary motion, that the "four circumstances" relied upon by the circuit court did not support that finding. Second, MCB contends that the communications made by the HOA parties were motivated by private parking concerns, not an issue of public concern or a matter within the authority of a government body. Third, MCB maintains that it made a "plausible

---

may consider in ruling on a motion. Patterned after similar out-of-state Anti-SLAPP laws, the amendments allocated the initial burden to the moving party to make a *prima facie* showing that the lawsuit was a SLAPP suit and, if met, shifted the burden to the non-moving party to show a probability of prevailing in the lawsuit "by presenting substantial evidence." *See* SB 990 (2010 Regular Session), Rejected Amendment to SB 990, 04/10/2010, 228373/01; *see also, e.g.,* Ga. Code Ann., § 9-11-11.1 (defendant may file a special motion to strike an alleged Anti-SLAPP suit which shall be granted unless the court determines, upon considering pleadings and supporting and opposing affidavits, that the non-moving party has established a probability of prevailing); D.C. Stat. § 16-5502 (allowing special motion to dismiss, allocating initial *prima facie* burden to moving party to show that lawsuit is a SLAPP and, if met, shifting burden to non-moving party to show likelihood of success on the merits). The proposed amendments would have permitted also the parties to submit supporting and opposing affidavits for the court's consideration in ruling on a motion to dismiss. *See* SB 990 (2010 Regular Session), Rejected Amendment to SB 990, 04/10/2010, 228373/01.

14

claim" that the HOA parties contravened the Community Declaration by their actions and, consequently, the lawsuit was not "materially related" to any protected communications. Fourth, MCB contends that the HOA parties could not and did not show at the dismissal stage that they acted without constitutional malice in making the communications. We grapple with these arguments in a slightly different order than presented to us by MCB.

## C. Analysis

### *a.*

We begin with MCB's contention that, because it alleged a plausible theory that the HOA parties violated the Community Declaration by its communications, the lawsuit is not related materially to or intended to inhibit the exercise of their First Amendment Rights. The circuit court rejected that argument, concluding that the plain language of the clauses of the Community Declaration relied upon by MCB did not support its position. We agree with the circuit court.

As noted earlier, Section 4.9 of the Community Declaration, which is quoted in full in the complaint, states that "neither [the] Clipper Mill Association nor any Person acting or purporting to act on its behalf" may file certain actions, appeal from certain actions by a court or administrative body, testify or submit evidence, or take a formal position on "any issue under consideration, in any such proceeding or appeal," unless the action is approved by votes of those holding at least 75% of the qualified votes. Section 5.3.2 prohibits the Clipper Mill Association, in its "management and control of a Community Common Area or otherwise" from "tak[ing] any action which prohibits,

15

impairs, delays, or makes more expensive Developer's . . . subdivision or development of any of Clipper Mill or other real property in accordance with a preliminary subdivision plan, site development plan or other plan approved by the City[.]"

"[W]hen . . . contract language is plain and unambiguous, 'the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.'" *Impac Mortgage Holdings, Inc. v. Timm*, 474 Md. 495, 507 (2021) (quoting *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656-57 (2006)). If there is no ambiguity, the court's task in interpreting the contract is "at an end." *Id*.

Here, the language of the pertinent provisions of the Community Declaration unambiguously do not preclude actions taken by the HOA parties' individually or on behalf of their homeowners' associations to oppose the Projects. Each provision prohibits action taken by or on behalf of the Clipper Mill Association. VS does not allege that any of the HOA parties ever held themselves out as acting on behalf of the Clipper Mill Association. Moreover, we take judicial notice that the pending administrative appeals were brought in the names of the HOAs and the individual board members, not on behalf of the Clipper Mill Association.

Contrary to MCB's contentions, Section 4.9 does not create an "exclusive mechanism and procedure" for challenges to later phase zoning and development actions or "delegate[] acting in judicial or administrative proceedings regarding the development of the Clipper Mill Community to the Clipper Mill Association[.]" It makes no mention of development or zoning of Clipper Mill and does not delegate any authority. It is a

16

broad prohibition that applies to *any* litigation – civil, criminal, or administrative – asserting any claim. Given the reach of this provision, it can be read reasonably only to restrict actions taken by or on behalf of the overarching community association, not to any action filed by any individual resident or by their homeowners' associations. Because we conclude that the Community Declaration did not apply to prohibit the actions taken by the HOA parties here, we do not need to address the argument that, as construed by MCB, the provisions are void as against public policy.

### b.

To be a SLAPP suit, a lawsuit must be aimed at a person or entity "who has communicated with a . . . government body or the public" in the exercise of rights afforded by the First Amendment or Article 10,[11] Article 13,[12] or Article 40,[13] of the

---

[11] The rights protected under Article 10 belong to members of the General Assembly engaging in speech and debate in the state legislature. MD. CONST., DECL. OF RTS., Art. 10 ("That freedom of speech and debate, or proceedings in the Legislature, ought not to be impeached in any Court of Judicature."). Those rights are not implicated here.

[12] Article 13 protects the rights of citizen to "petition the Legislature for the redress of grievances in a peaceable and orderly manner." MD. CONST., DECL. OF RTS., Art. 13. The Court of Appeals has construed that provision to protect the right of citizens to assemble and communicate their disagreement with the "passage of a law[.]" *Richards Furniture Corp. v. Bd. of Cnty. Comm'rs of Anne Arundel Cnty.*, 233 Md. 249, 259-60 (1963). Article 13 is not implicated in this case.

[13] Article 40 is the Maryland counterpart to the First Amendment, providing "[t]hat the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." MD. CONST., DECL. OF RTS., Art. 40. "Although the two constitutional provisions are worded differently and this Court has sometimes held out the possibility that Article 40 could be construed differently from the

(Continued…)

Maryland Declaration of Rights "*regarding any matter within the authority of a government body or any issue of public concern*[.]" CJP § 5-807(b)(1) (emphasis added).[14] The statute focuses upon the substance of communications and the identity of the recipients of those communications. Communications about matters that are neither within the authority of a government body nor on an issue of public concern are not protected communications under the Anti-SLAPP statute. Likewise, if a defendant communicates privately, *i.e.*, not to the public or to a government body, subsection (b)(1) is not satisfied.

It is not contested that the HOA parties communicated with "State, or local government bod[ies]" and "the public at large" about their opposition to the Project. MCB's argument focuses instead upon their motivation for doing so, arguing that their opposition to the Project was a ruse to force VS/MCB to provide additional personal parking to residents of the Millrace and the Homes at Clipper Mill, beyond their

First Amendment in some circumstances, the Court has generally regarded the protections afforded by Article 40 as 'coextensive' with those under the First Amendment." *Clear Channel Outdoor, Inc. v. Dir., Dep't of Fin. of Baltimore City*, 472 Md. 444, 457 (2021) (citations omitted). Because no reason for departure from that rule is presented here, we shall refer only to the First Amendment in our discussion of the issues in this case.

[14] As originally enacted, the Anti-SLAPP statute only applied to communications "regarding matters within the authority of a government body[.]" 2004 Md. Laws, ch. 279, § 1. In 2010, the Legislature amended the statute to expand the definition of a SLAPP suit to include communications on "any issue of public concern[.]" 2010 Md. Laws, ch. 368, § 1.

entitlement under the PUD.[15]  It maintains also that "personal parking concerns" are not a matter of public concern *and* are not within the jurisdiction of a government body.

Though the substance of the HOA parties' communications is not alleged in VS's complaint, we take judicial notice of the subject matter as reflected in the record of the proceedings before the circuit court in the administrative appeal.  *See Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 413 (2014) (courts may take judicial notice of "public records such as court documents").  Counsel for the HOA parties summarized their position before the circuit court:

> My clients have explained on the record [before the Planning Commission] how they are affected.  They live in the Clipper Mill community.  It's a very small community of several blocks, consisting of 169 homeowners. They say that by the removal of 48 spaces of parking, that they will be living in a community that does not have adequate parking.  They say that the residents will be fighting over parking spaces and there will be a great deal of difficulty arising from that.

They also took the legal position in both administrative appeals that the changes proposed to the PUD were "major," necessitating an ordinance passed by the City Council rather than approval merely by the Planning Commission.

We are satisfied that these communications to the public, to the Planning Commission, and to the circuit court were made on an issue within the authority of a government body *and* on an issue of "public concern."  Amendment of a PUD in Baltimore City is committed to the authority of up to potentially two government bodies:

---

[15] The PUD provides for 1.5 parking spaces per townhouse and single-family dwelling and 1 parking space per dwelling unit in multiple family dwellings, such as the Millrace.

the Planning Commission and the Baltimore City Council.  *See* BCZO §§ 13-402 – 13-403.  VS applied to the Planning Commission to amend the PUD for the Projects.  The review by the Planning Commission (and the circuit court) concerned whether the proposed amendments to the PUD increased the total number of approved dwelling units by more than 10 percent; changed the type, location, or arrangement of land within the PUD; or changed the boundaries of the PUD.  *See* BCZO § 13-403 (detailing changes in a PUD that are major and require passage on an ordinance by the City Council).  The HOA parties' opposition to those proposed amendments, through testimony and public comment at the Planning Commission hearings and through administrative appeals taken from rulings in favor of VS, were communications about a matter within the authority of a government body and, on that basis alone, we hold that the HOA parties satisfied this prong of CJP § 5-807(b)(1).

In any event, even if the HOA parties communicated to the Planning Commission only about a decrease in the number of parking spaces within the PUD, this was also a protected communication on an issue of public concern.  First Amendment jurisprudence in the context of actions for defamation and wrongful discharge establish that a matter of "public concern" means "'fairly considered as relating to any matter of political, social, or other concern to the community,'"  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)), "or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public,'" *id*. (quoting *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)); *accord O'Leary v. Shipley*, 313 Md. 189, 201 (1988).  Whether a communication is "on a matter of public

20

concern is a question of law for the court, to be determined 'by the content, form, and context of a given statement.'" *McIntyre v. Guild, Inc*., 105 Md. App. 332, 350 (1995) (quoting *Connick*, 461 U.S. at 147-48).

The substance of the parking concerns raised by the HOA parties,[16] as well as the context in which they raised them, support the conclusion that they communicated on issues of public concern. The United States Court of Appeals for the Fourth Circuit has opined, in cautioning against federal intervention in state land use cases, that it could "conceive of few matters of public concern more substantial than zoning and land use laws." *Pomponio v. Fauquier Cnty Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir.1994) (*en banc*), *overruled in part on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728-31 (1996). The number, configuration, and location of parking spaces are heavily regulated by local zoning and land use ordinances. *See, e.g.*, BCZO §§ 9-101 & 9-703(f) (requiring at least one off-street parking space per dwelling unit within a multi-family residential district); BCZO § 16-101 (stating that the purposes of the off-street parking and loading title of the zoning ordinance include "provid[ing] accessible, attractive, secure, and well-maintained off-street parking . . . areas with the appropriate number of spaces in proportion to the needs of the proposed use" and "increas[ing] public safety by reducing congestion of public streets"). Debatably insufficient residential off-

---

[16] VS included in its appendix to its brief the decision of the circuit court affirming the Planning Commission's decision to approve the minor amendment to the PUD for the Townhouse Project. That decision, of which we may take judicial notice, recounts the arguments raised by opponents of the amendment before the Planning Commission, including concerns about traffic congestion and lack of parking for businesses.

street parking spaces in a mixed-use development, such as Clipper Mill, impacts the public in relation to traffic congestion, access to businesses located there, and access to employment. It is not a purely private matter.[17]

We turn now to the flagship issue in dispute: whether the circuit court erred by determining at the motion to dismiss stage that this litigation was brought in "bad faith". For the reasons to follow, we hold that, in a subset of cases (that includes the present one), bad faith is susceptible of being determined as a matter of law by the court on a motion to dismiss an alleged SLAPP suit.

"Bad faith" is not defined in the Anti-SLAPP statute.[18] To ascertain the meaning of a statute, we follow the familiar rules of statutory construction. It is "well established that '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature.'" *Espina v. Prince George's Cnty.*, 215 Md. App.

---

[17] The cases cited by VS/MCB to the contrary are distinguishable easily. All three cases involved employment disputes over parking and none involved land use or zoning disputes. *See Bagarozzi v. New York City Dep't of Educ.*, 2019 WL 1454316, at *9 (S.D.N.Y. Mar. 31, 2019) (teacher's grievances relative to the location of staff parking at her school were not a matter of public concern); *Rippeon v. Frederick Cnty. Bd. of Educ.*, 833 F.Supp.2d 499, 508 (D. Md. 2011) (electrician employed by school district was not speaking on a matter of public concern when he spoke to a local news station about district's denial of his request for satellite parking privileges), *aff'd* 463 F. App'x 182 (4th Cir. 2012); *Hainey v. Ricks*, 2009 WL 10737100, at *1 (D.D.C. Oct. 2, 2009) (department of transportation employee not speaking on a matter of public concern when she complained about mismanagement of a program to distribute residential parking passes).

[18] A proposed amendment to the Anti-SLAPP statute in 2010 would have eliminated the "in bad faith" language from the definition of a SLAPP suit. *See* SB 990 (2010 Regular Session), Rejected Amendment to SB 990, 04/10/2010, 228373/01. That amendment was rejected. *Id.*

611, 630 (2013) (quoting *Lockshin v. Semsker*, 412 Md. 257, 274 (2010)), *aff'd sub nom.*

*Espina v. Jackson*, 442 Md. 311 (2015).  As the Court of Appeals explained:

> [W]e begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.  When the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia.  Moreover, after determining a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objectives and purpose of the statute and Legislative intent.
>
> Even in instances when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.
>
> * * *
>
> In the event the language of a statute is ambiguous, we will often apply rules of statutory construction to ascertain the intent of the legislature.  One such rule is to read the language of a statute in such a way that will carry out its object and purpose.  This Court will also consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.

*Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018) (cleaned up).

The Court of Appeals has construed the term "bad faith" as used in Rule 1-341,[19]

governing sanctions against litigants and/or their counsel for maintaining or defending a

---

[19] Rule 1-341(a) provides that "[i]n any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification," the court may, on motion by an adverse party, order the offending party or his and/or her attorney to pay costs and fees incurred by the adverse party.

proceeding in bad faith or without substantial justification. Those cases define "bad faith" to mean the pursuit of litigation "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs. v. Harrison Inn Inlet, Inc*., 324 Md. 254, 268 (1991); *accord Christian v. Maternal-Fetal Medicine Assocs. of Md., LLC*, 459 Md. 1, 21 (2018). This definition is consistent with frequent dictionary definitions of "bad faith," which emphasize dishonest motivation. *See Black's Law Dictionary*, 171 (11th ed. 2019) (defining "bad faith" as "[d]ishonesty of belief, purpose, or motive"); *Webster's Third New Inter'l Dictionary*, 816 (2002) (defining "faith" as "sincerity or honesty of intentions" and, when modified with "bad," to mean an attempt to "deceive, mislead, or defraud"). The definition of bad faith in the context of Rule 1-341, like the Anti-SLAPP statute, serves the purpose of deterring abusive litigation. *See Christian*, 459 Md. at 19 (Rule 1-341 "was intended to function primarily as a deterrent" against abusive litigation) (quotations and citation omitted).

The structure of the Anti-SLAPP statute envisions that, in the appropriate case, bad faith may be decided upon a preliminary motion to dismiss. Subsection (d) of the statute specifies that a defendant may move to dismiss an alleged SLAPP suit and directs the circuit court to hear such a motion "as soon as practicable."[20] By the inclusion of subsection (d), the legislature created a mechanism for a defendant to obtain an expeditious dismissal of a SLAPP suit before he or she is forced to expend time and

---

[20] Alternatively, a defendant may move to stay the alleged Anti-SLAPP suit pending resolution of the matter about which the defendant has communicated to a government body or the public. A motion to stay was not filed in this case.

money defending the suit. This is consistent with the overall purpose of the Anti-SLAPP statute, which is aimed at protecting defendants from being deterred from exercising their First Amendment rights by the initiation of meritless and vexatious litigation. If the determination of bad faith necessitated always an evidentiary proceeding, subsection (d) would be rendered nugatory because a defendant could never satisfy the threshold criteria of the statute and obtain dismissal. *Motor Vehicle Admin. v. Gonce*, 446 Md. 100, 125 (2016) (it is a well-established principle of statutory construction that "a statute should be read so that no word, clause, sentence or phrase is rendered . . . nugatory") (quotations and citation omitted); *see also Johnson v. Baker*, 84 Md. App. 521, 535, 539-40 (1990) (holding that an evidentiary hearing is not always required under Rule 1-341 because so requiring would "prolong an action that already has continued too long and would use even more of the judicial system's limited resources[,]" which ran counter "to the purpose of the rule and to common sense").

We do not suggest that bad faith will be apparent always on the face of the pleadings. Unquestionably, determining whether a lawsuit was brought "vexatiously for the purpose of harassment or unreasonable delay, or for other improper reasons, may involve issues of fact in many cases." *Inlet Assocs.,* 324 Md. at 268. Nevertheless, there are cases in which the allegations of the pleadings, exhibits incorporated therein, and other matters capable of being noticed judicially, supply evidence from which bad faith may be discernable as a matter of law. This case, unlike the unreported federal district court decisions relied upon by MCB, presents such a scenario.

25

The trial court reasoned that four factors supported its finding that VS pursued the litigation in bad faith. First, the timing of VS's complaint, filed four days after a ruling arguably adverse to VS in the HOA parties' petition for administrative mandamus, was suggestive of retaliation. The court emphasized that, even though that decision was not adverse to VS on the merits, the remand order for supplying missing findings of fact and conclusions of law by the Planning Commission "further delayed and frustrated" VS's development efforts. VS's repeated allegations in the complaint that the HOA parties' efforts were delaying its development efforts, causing it to lose money, support the conclusion that the delay caused by the remand order was not inconsequential. Timing is particularly relevant also in the context of an alleged SLAPP suit because the purpose of the litigation is to deter and intimidate defendants from continuing their public opposition to the plaintiff's aims. Here, the timing of the lawsuit was intended expressly to put a stop to the HOA parties' actions.

Second, the circuit court reasoned that VS's request for $25 million in punitive damages was unsupported by any "plausible" allegations that the HOA parties acted with an "evil motive." The complaint failed also "to remotely suggest that [the HOA parties], who are residents of a Baltimore City condominium [and townhouse] development, committed acts of such gravity or have the means to support an award of $25 million in punitive damages." In Maryland, "'in order to recover punitive damages in any tort action . . ., facts sufficient to show actual malice must be pleaded and proven by clear and convincing evidence.'" *1st Team Fitness, LLC v. Illiano*, 228 Md. App. 137, 152 (2016) (emphasis omitted) (quoting *Scott v. Jenkins*, 345 Md. 21, 29 (1997)). Here, the only

26

facts pleaded concerning the HOA parties' alleged "wrongful intent" was an email written *to* Ms. Meyer *from* a former resident of the Millrace, in which he described some of the public opposition to the Tractor Building Project as a "ploy to try to get [the developer] to buzz off." These facts are insufficient patently to show that the HOA parties acted with actual malice in opposing VS's development efforts. Given VS's failure to plead adequately punitive damages, the excessiveness of its demand is evidence that its true intent was intimidation. *See, e.g., Wilcox v. Superior Court*, 33 Cal.Rptr.2d 446, 449-50 (Cal. App. 1994) (explaining that SLAPP suit plaintiffs "typically ask for damages which would be ruinous to the defendants"), *disapproved of on other grounds by Equilion Enters. v. Consumer Cause, Inc.*, 124 Cal.Rptr.2d 507, 519 n.5 (Cal. 2002).

Third, the court took judicial notice of the discovery requests that VS served on the HOA parties, seeking all their personal banking records for the past five years. It concluded that the requests were "abusive." Likewise, the court was troubled by the electronically-stored information preservation letter attached to that request, which it reasoned was "akin to the type of preservation letter seen in large scale corporate litigation" and was not appropriate for a suit against individual residents of a housing development. MCB argues that the discovery requests were appropriate considering VS's request for punitive damages because, as plaintiff, it was obligated to assess the defendant's ability to pay. Given our conclusion that VS failed to plead, with particularity, its basis for its punitive damages demand, the related discovery requests are unreasonable and supported an inference of bad faith. *See Johnson*, 84 Md. App. at 532

27

("tactics during the course of . . . litigation" may support a finding of bad faith under Rule 1-341).

Fourth, the circuit court reasoned that the allegations of the complaint were "conclusory" and "devoid of any specific facts" to support the claim that the HOA parties made any false or misleading claims about VS or that they "created fictitious and subversive associations" to oppose the Projects. MCB does not argue to the contrary, instead suggesting that the circuit court "fixated" upon these two allegations, amid a lengthy complaint and that these allegations could have been developed during discovery. The conclusory nature of those allegations was notable, however, because the remaining allegations against the HOA parties were customarily protected First Amendment activities, such as organizing public opposition to the development plans, writing emails and letters to elected officials and other community members, and engaging counsel to file legal challenges to VS's efforts.

The facts in this case stand in stark contrast to the federal decisions cited by MCB where motions to dismiss under the Maryland Anti-SLAPP statute were denied. *See Knox v. Mayor & City Council Baltimore City*, 2017 WL 5903709 (D. Md. 30 Nov. 2017), *Ugwuonye v. Rotimi*, 2010 WL 3038099 (D. Md. 30 July 2010), and *Russell v. Krowne*, 2010 WL 2765268 (D. Md. 12 July 2010). In *Knox*, the district court declined to dismiss a counterclaim under the Anti-SLAPP statute asserting claims for malicious prosecution, fraud, defamation and battery against a subordinate employee, filed within her case for employment discrimination premised upon sexual harassment and retaliation, concluding that the employee made "bare allegations" that the supervisor filed the

counterclaim in bad faith to deter the plaintiff from exercising her rights under the First Amendment. 2017 WL 5903709, at *11. In *Ugwuonye*, the district court denied an Anti-SLAPP motion to dismiss a defamation suit premised on "mere allegation[s]" that the lawsuit was part of a plot by the Nigerian Embassy to silence the proprietor of a Nigerian news website. 2010 WL 3038099, at *4. In *Russell*, the district court concluded that, by submitting materials beyond the pleadings, the parties had transformed a motion to dismiss under the Anti-SLAPP statute into one for summary judgment and ruled that genuine disputes of fact on bad faith and whether the matters communicated were within the authority of a government body precluded the grant of the motion in a defamation action. 2010 WL 2765268, at * 3. None of these cases involved typical SLAPP suits and none held that bad faith (or other elements of CJP § 5-807) necessitated discovery or an evidentiary proceeding in every case.

This case, in contrast, stems from a strained and, as we have held already, non-meritorious construction of the Community Declaration as prohibiting individual residents of the Clipper Mill development from opposing further development that they assert is contrary to the PUD as approved in 2003. Against that backdrop, drawing all reasonable inferences in favor of MCB/VS from the well-pled allegations of the complaint, its timing, coupled with the unsupported and exorbitant request for punitive damages, the overbroad discovery requests, and the lack of any non-conclusory allegations of tortious conduct by the HOA parties, demonstrated that the lawsuit was pursued vexatiously in retaliation against the HOA parties for their public opposition to VS's development efforts and to deter them from continuing those efforts.

29

*d.*

MCB contends that the HOA parties failed to satisfy CJP § 5-807(c), conditioning civil immunity upon a lack of constitutional malice in making the communications at issue. It emphasizes its allegations that the HOA parties' opposition to the Projects before the Planning Commission and the circuit court was undertaken "for the veiled and improper purpose of coercing personal parking concessions from VS."

Constitutional malice, often referred to as actual malice, "is established by clear and convincing evidence that a statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Batson v. Shiflett*, 325 Md. 684, 728 (1992) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Assuming the truth of VS's allegations that some or all the HOA parties had an ulterior or alternative motive for interposing objections to the development efforts, their arguments before the Planning Commission and the circuit court that the amendments to the PUD were major changes, including their successful advocacy that the Planning Commission did not make sufficient findings of fact and conclusions of law on the record to support its initial approval of the minor amendment to the PUD for the Townhouse Project, were not false. MCB/VS make no non-conclusory allegations that the HOA parties or those advocating on their behalf made false statements to the Planning Commission or acted in reckless disregard of the falsity of those statements, all of which were within the realm of legitimate advocacy in a land use case and were not frivolous.

## CONCLUSION

When the Anti-SLAPP statute is invoked appropriately, wrongfully-brought litigation is deflected, preventing it from hitting its target of deterring or extinguishing public participation in governmental proceedings in opposition to the plaintiff's interests. Here, that purpose was served by the expeditious grant of the HOA parties' motion to dismiss a complaint that, on its face, was without merit and expressly aimed at quashing the defendants' continued opposition to the Project.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

31

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1187s20cn.pdf