*State of Maryland v. Artiis Ricardo Williams*
No. 802, Sept. Term 2021
Opinion by Leahy, J.

**Criminal Law > Criminal Law Article Section 3-210, Assault by Inmate—Sentencing > "Consecutive Sentence" Requirement > Plain Language**

The Maryland General Assembly's use of the word *shall* in Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article ("CR"), § 3-210(b) confirms that the statute's requirements for imposing a consecutive sentence are mandatory.

**Criminal Law > Criminal Law Article Section 3-210, Assault by Inmate —Sentencing > "Consecutive Sentence" Requirement > Plain Language**

By requiring that a sentence imposed under CR § 3-210(b) "shall" be consecutive to "any" eligible sentence, the General Assembly intended that the sentence be imposed to "every" eligible sentence. To assign a disjunctive meaning to the word "or" in CR § 3-210(b) would undermine this intent, as it would, plainly, allow sentencing judges to impose sentences that were consecutive to *some*, but not *every*, eligible sentence.

**Criminal Law > Criminal Law Article Section 3-210, Assault by Inmate —Sentencing > "Consecutive Sentence" Requirement > Plain Language**

Considering, in context, the mandatory terms of CR § 3-210 together with the inclusive meaning of the word "any" preceding the sentences described in CR § 3-210(b), the only logical construction of the word "or" in CR § 3-210(b) is that it operates as an inclusive conjunction. We hold, therefore, that the language of the statute requires that a sentence imposed under CR § 3-210 "shall" be imposed consecutively to the last to expire of "any" sentence that the inmate was serving at the time of the assault as well as "any" sentence that had been imposed, but that the inmate was not yet serving, at the time of sentencing.

Circuit Court for Harford County
Case No. C-12-CR-19-001381

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 802

September Term, 2021

_____

STATE OF MARYLAND

v.

ARTIIS RICARDO WILLIAMS

_____

Kehoe,
Leahy,
Beachley,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: August 31, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Since 1985, the Maryland General Assembly has required that inmates convicted of assaulting other inmates receive a "consecutive sentence."  As currently codified, the "consecutive sentence" requirement of Maryland's inmate assault statute provides:

> A sentence imposed under this section shall be consecutive to any sentence that the inmate was serving at the time of the crime *or* that had been imposed but was not yet being served at the time of sentencing.

Maryland Code (2002, 2021 Repl. Vol.), Criminal Law Article ("CR"), § 3-210(b) (emphasis added).  The resolution of this appeal turns on the purpose and effect of the word "or" as it is used in CR § 3-210(b).

Appellant, Artiis Ricardo Williams, struck another inmate with his fists on December 8, 2019, while incarcerated at the Harford County Detention Center.  At a hearing on October 21, 2020—which we shall refer to as the "plea and sentencing hearing"— Mr. Williams pleaded guilty to second-degree assault on an inmate and was sentenced to one year and one day imprisonment, "consecutive to the last sentence to expire of all outstanding and unserved sentences."

Months later, Mr. Williams filed a motion to correct an illegal sentence.  He argued that his sentence was not permitted by law because it was imposed consecutive to two other consecutive sentences: a 25-year sentence that he was serving at the time he assaulted the other inmate; and a 12-year sentence for a separate crime which had been imposed after the assault took place but before he was ultimately sentenced for the assault conviction.  In other words, he was sentenced to serve one year and one day at the expiration of his 12-year sentence which is consecutive to his 25-year sentence.  He argued that the "or" in CR § 3-210(b) should be read as exclusive, requiring that he be sentenced to a term consecutive

to either the sentence that he was "serving at the time of the crime" or a sentence that "had been imposed but was not yet being served at the time of sentencing."

At the conclusion of a hearing on July 8, 2021, the circuit court granted Mr. Williams's motion, finding that his plea was not knowing and voluntary because during the plea and sentencing hearing, he was advised that the sentence for his assault conviction would be imposed consecutive only to the 25-year sentence that he was serving at the time of the assault. The court then resentenced Mr. Williams to a term of one year and one day, consecutive only to the sentence that he was serving on the date he assaulted the other inmate. The State, pursuant to Maryland Code (1973, 2020 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP"), § 12-302(c)(3), noted an appeal on August 3, 2021.[1] It presents one question: "Did the circuit court act without authority when it modified [Mr.] Williams's sentence for assault on an inmate from a consecutive sentence to a concurrent one?"

We hold that CR § 3-210(b) requires that when an inmate is sentenced for an assault under CR § 3-210, the sentence imposed "shall" be consecutive to the last to expire of "any" sentence that the inmate was serving at the time of the assault as well as "any" sentence that had been imposed, but that the inmate was not yet serving, at the time of

---

[1] Courts and Judicial Proceedings Article, § 12-302(c)(3), establishes that in a criminal case:

> The State may appeal from a final judgment if the State alleges that the trial judge:
>     (i) Failed to impose the sentence specifically mandated by the Code; or
>     (ii) Imposed or modified a sentence in violation of the Maryland Rules.

sentencing.  In the underlying case, the court correctly found that Mr. Williams was not advised at his plea and sentencing hearing that his sentence would be consecutive to both of his previously imposed sentences.  At this juncture, the court should have vacated the sentence and given Mr. Williams the opportunity to withdraw his plea and stand trial. Instead, the court imposed an illegal sentence.  We reverse the court's judgment, vacate the illegal sentence, and remand for further proceedings consistent with this opinion.

## BACKGROUND

### A. The Assault

In conjunction with the plea agreement presented to the court at the plea and sentencing hearing, the State read into the record a statement of facts, which Mr. Williams accepted with two modifications.  The following account is based on the State's recital and Mr. Williams's corrections.

According to the State's proffer, Mr. Williams, while incarcerated at the Harford County Detention Center, assaulted another inmate on December 8, 2019.  He initiated the incident by throwing a pair of dice and striking the inmate in the head.  Standing only several feet away from Mr. Williams, the inmate responded by throwing an empty bottle at Mr. Williams.  The bottle hit the phone that Mr. Williams was holding.  Mr. Williams then struck the inmate in the head with "a closed fist[,] knocking him to the ground."  Once the inmate was on the ground, Mr. Williams began socking him in the head with his fists,

while another prisoner "stomp[ed]" on the inmate's head. The alteration ended after yet another prisoner "pulled everybody apart."[2]

Later the same day, the inmate informed corrections staff that he needed to go to the hospital because his jaw was broken. The inmate was taken to Johns Hopkins Bayview Medical Center, "where he was diagnosed with a bilateral fracture of his mandible, . . . and also a missing lower tooth." The mandible fracture required surgery.

Mr. Williams did not dispute that he struck the inmate in the head multiple times. He claimed, however, that he did not initiate the incident and that the inmate incorrectly identified him as the person who threw the dice.

The Grand Jury for Harford County, on December 31, 2019, returned a four-count indictment against Mr. Williams charging him with: (1) first-degree assault; (2) first-degree assault on another inmate; (3) second-degree assault; and (4) second-degree assault on another inmate.

### B. The Other Sentences

At the time of the assault, Mr. Williams was serving a term of 40-years' incarceration, with all but 25 years suspended, for various possession and possession with intent to distribute narcotics convictions in Case No. C-12-CR-18-000561 ("case number 561").[3] Mr. Williams was sentenced in case number 561 on December 6, 2019—just two

---

[2] The State noted that Mr. Williams's initial punch to the inmate's head was captured on the detention center's surveillance system. The altercation fell out of the video system's view, however, when the inmate fell to the ground.

[3] Mr. Williams was also sentenced to a five-year term of supervised probation.

days *before* the assault took place. Then, five days *after* he assaulted the inmate, Mr. Williams pleaded guilty in Case No. 12-K-17-001435 ("case number 1435"), involving an unrelated possession with intent to distribute charge for an incident that occurred in 2016. In case number 1435, Mr. Williams was sentenced to 25 years' imprisonment, with all but 12 years suspended.[4] The commitment record in case number 1435, entered on December 13, 2019, specifies that Mr. Williams's sentence is to be served consecutive to his sentence in case number 561.[5]

## C.    The Underlying Plea Agreement

Mr. Williams pleaded guilty to second-degree assault on another inmate at the plea and sentencing hearing on October 21, 2020. In exchange for this plea, the State entered a

---

[4] Mr. Williams was also sentenced to a three-year term of supervised probation.

[5] We take judicial notice of the dockets and commitment records in Case No. C-12-CR-18-000561 and Case No. 12-K-17-001435, even though they are not included as part of the record on appeal. Generally, "a court will not travel outside the record of the case before it in order to take notice of proceedings in another case." *Dashiell v. Meeks*, 396 Md. 149, 176 (2006) (quoting *Fletcher v. Flournoy*, 198 Md. 53, 60 (1951)). However, in "exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation." *Fletcher*, 198 Md. at 60-61.

Both parties refer to Case No. C-12-CR-18-000561 and Case No. 12-K-17-001435 in their briefs, and the sentences imposed in those cases bear on the outcome of this appeal. Accordingly, we take judicial notice of the records in these cases as we believe "that a just result will be best reached by considering" them. *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 145 n.4 (2012) (noting that judicial notice was appropriate as, "[b]oth parties acknowledged during oral arguments that [the] pretrial statements bear on the outcome of the case, and we believe that a just result will be best reached by considering them"). *See also MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*, 253 Md. App. 279, 302 (2021) ("Courts may take judicial notice of 'public records such as court documents.'" (quoting *Abrishamian v. Wash. Med. Grp., P.C.*, 216 Md. App. 386, 413 (2014)).

nolle prosequi for the other counts and agreed to dismiss a parole violation in case number 561. The State advised the court that the parties had agreed to a sentence of one year and one day "consecutive to any other sentences which have not yet been completed." Defense counsel agreed with the terms proffered by the State but noted that, from her review of Mr. Williams's record, his sentence "would be consecutive to case C-12-CR-18-000561."

Defense counsel advised Mr. Williams of the elements of second-degree assault on an inmate, and readvised him that his sentence would be consecutive to his sentence in case number 561:

> [DEFENSE COUNSEL]: The maximum penalty is ten years, but it has to be imposed consecutive to any sentence that you have been . . . has been imposed whether you're serving or not yet serving. So that sentence would be the case with the 25 years that you received . . . ending in [0561] . . . . You understand that?
>
> [MR. WILLIAMS]: Yes.

The court accepted the plea agreement after it found that Mr. Williams knowingly and voluntarily entered his plea. It imposed a sentence of one year and one day, with one day of credit, to be served "*consecutive to any and all other sentences that you are currently serving*." (Emphasis added). Immediately after the court announced the sentence, defense counsel, to clarify the terms of the sentence, interposed:

> [DEFENSE COUNSEL]: Your Honor. Just for clarification, when I read the statute, it does say inmate serving sentence that has been imposed, it's unclear as to whether that's from the date of the incident or the date of today. It's not very -- the statute [i]s very unclear.
> I'm reading it as it should be imposed as to the sentence that he was serving at the time he committed the offense, which would have just been the case ending in 561.

6

[THE STATE]: Our agreement was that it would be consecutive to all unserved sentences.

THE COURT: I'm going to impose it consecutive to any and all sentences he is currently served [sic]. If you'd like to raise that issue with the Court of Special Appeals, if you can, I don't know that -- well, yeah, about the illegal sentence, if you want to, go right ahead.

[DEFENSE COUNSEL]: Thank you, Your Honor.

THE COURT: If they want to clarify it, they'll clarify it.

[DEFENSE COUNSEL]: It is very unclear in the statute.

THE COURT: They can fix that. I can't. All right. And that will be the sentence of the [c]ourt. I'm not going to put you on probation for this, Mr. Williams. You serve – do your time and you'll be finished with me.

The commitment record, docketed the same day, reflects that Mr. Williams's sentence was to be served "consecutive to the last sentence to expire of all outstanding and unserved sentences."

### D.    Motion to Correct an Illegal Sentence

Mr. Williams filed a motion to correct an illegal sentence on March 12, 2021. He claimed that his sentence, which was imposed consecutive to his sentence in case number 561 and case number 1435, was illegal because the court lacked the "statutory authority" to impose it. In his view, the language of CR § 3-210 required the judge to impose a sentence that was consecutive to either his sentence in case number 561, which he was serving on the date he assaulted the other inmate, or his sentence in case number 1435, which had been imposed but that he was not yet serving at the time of sentencing.

The State responded that the consecutive nature of the sentence was "an explicit part of a binding plea agreement" and that it was "disingenuous" of Mr. Williams "now to claim

7

that the sentence is illegal and should be modified." The State argued that the language of CR § 3-210(b) required the sentencing judge to "impose the assault sentence consecutive to both" of Mr. Williams's prior sentences, as they both fell within the scope of the statute because they were imposed prior to the plea and sentencing hearing on October 21, 2020.

At the hearing on Mr. Williams's motion, held on July 8, 2021, defense counsel took the position that the General Assembly was "quite clear" that it intended the "or" in CR § 3-210(b) to be interpreted as an exclusive disjunction as opposed to an inclusive conjunction. Therefore, under CR § 3-210(b), the circuit court could have imposed the sentence for his assault conviction consecutive to either his sentence in case number 561 or his sentence in case number 1435, but not both. Had the General Assembly intended otherwise, in place of the word "or," it would have substituted an "inclusive" word, such as "and" or "and or both." Accordingly, defense counsel urged that "fundamental fairness" required that the sentence for Mr. Williams's assault conviction be imposed consecutive only to his sentence in case number 561.

The State pressed that Mr. Williams's illegal sentence argument was "disingenuous," because the State dismissed a violation of probation charge against him in exchange for his "agreeing to time consecutive to all outstanding sentences." The State added that Mr. Williams's interpretation of CR § 3-210(b) "simply doesn't make sense." Had the General Assembly used "and" in place of "or" as defense counsel suggested, then it would have required that a sentence for assault under CR § 3-210 be served consecutive to a sentence or sentences that are simultaneously "being served and not yet being served." According to the State, the General Assembly's intent was "very obvious"—if inmates are

8

convicted of assaulting other inmates, they do not get "to do concurrent time with another sentence."

Defense counsel responded by noting that at the time Mr. Williams pleaded guilty, it was her understanding that his sentence for assaulting the inmate would "only be consecutive to the case ending in 561" and that she advised Mr. Williams as such during the hearing.

After hearing further argument, the court ruled:

> So, I read the transcript again. I have to agree with [defense counsel] . . . that the statute is ambiguous because it says consecutive to any sentence that the inmate was serving at the time of the crime or that had been imposed but was not yet being served at the time of sentencing. I don't know that that is ambiguous, but I think that what the [c]ourt should have advised him should have been exactly that. I never told him, he was never advised that it would be consecutive, not only the sentence that he was serving, but also the sentence that had been imposed that he was not yet serving . . . .
>
> At any rate, I have to agree with [defense counsel] and I have to put the blame on me for not having explained and made sure that the terms of the plea agreement and the terms of the sentencing were as clear as they should have been.
>
> So, because of that, and to save everyone a lot of time and a lot of paper and a lot of pleadings on post-conviction, I'm going to grant your request and I will vacate the sentence that was imposed for those reasons. Not only the reasons that you raised, but also I believe that during the advisement, during the taking of the plea you did tell him, and it was not corrected, that the sentence would be consecutive to the sentence that he received from Judge Eaves ending in [561]. That's what he was told at the plea agreement.
>
> So, I'm going to grant the request.

The State pointed out that if the court's decision was "based on [Mr. Williams] not understanding the nature of the plea, then the remedy is for him to have a new trial date

9

and withdraw the plea." The court determined that withdrawal of the plea was unnecessary, however, because Mr. Williams was asking only for a sentence modification. Mr. Williams was then resentenced to a term of imprisonment of one year and one day, with credit for one day, to be served "consecutive to the sentence being served in C-12-CR-18-561." The State filed a notice of appeal on August 3, 2021.

## DISCUSSION

### The Parties' Contentions on Appeal

The State maintains that the language of CR § 3-210(b) plainly requires that a sentence for assaulting an inmate be imposed consecutive to any sentence that the inmate was serving at the time of the assault as well as any sentence that had been imposed but was not yet being served at the time of sentencing. The "or" as employed in CR § 3-210(b) should be read as a conjunctive term because, the State argues, the terms "or" and "and" "may be used interchangeably when it is reasonable and logical to do so." (Quoting *Little Shore, Inc. v. State*, 295 Md. 158, 163 (1983)). In the State's view, the General Assembly did not utilize the word "and" in place of the "or" in CR § 3-210(b) because "and" would communicate that a sentence for assaulting an inmate "had to run consecutive to a single sentence, one 'that the inmate was serving at the time of the crime' and, at the same time, one 'that had been imposed but was not yet being served at the time of the sentence'—a legal impossibility." The General Assembly's decision to preface the types of eligible sentences in CR § 3-210(b) with the word "any," the State avers, further indicates "the legislature's intent for the sentence to be able to run consecutive to . . . sentences that an inmate was serving *and* any outstanding sentences." (Emphasis added).

10

Because Mr. Williams's modified sentence will be served "effectively . . . concurrent" to his sentence in case number 1435, the State contends that it is illegal under CR § 3-210(b). In the State's view, CR § 3-210(b) mandates that Mr. Williams be sentenced to a term consecutive to both his sentence in case number 561 and his sentence in case number 1435 because he was sentenced in both cases before the plea and sentencing hearing on October 21, 2020. Sentencing Mr. Williams to a term consecutive only to his sentence in case number 561, the State asserts, thwarts the intent of CR § 3-210, as Mr. Williams will not serve "additional time in jail." Mr. Williams's willingness to accept a sentence consecutive only to his sentence in case number 561 is, according to the State, "irrelevant," as the terms of a plea agreement cannot "provide for . . . an illegal sentence."

The State also complains that the sentencing judge modified Mr. Williams's sentence "[i]n a misguided attempt to correct a perceived error on its own part." The State avers that the judge did not modify Mr. Williams's sentence to conform to the mandates of CR § 3-210(b). Rather, in the State's view, the judge modified his sentence because it "failed to advise him that his sentences would be fully consecutive to one another and thus his plea was not knowing and voluntary." The proper remedy for such a violation, the State asserts, is to "allow [Mr.] Williams the opportunity to withdraw his guilty plea and either plead anew or proceed to trial," and, therefore, the court erred when it "imposed an illegal sentence" instead of "restor[ing] the parties to their original bargaining positions."

Mr. Williams defends the circuit court's decision to modify his sentence on two grounds. First, he argues that the sentence originally imposed was illegal under CR § 3-210(b). The General Assembly, by employing the word "or" in CR § 3-210(b), intended

11

to present sentencing judges with "an option between alternatives," as the plain meaning of "or" "indicates a disjunctive, and not an 'additive.'" In Mr. Williams's view, the sentence originally imposed for his assault conviction violated the "clear and unambiguous" language of CR § 3-210(b) because it was imposed consecutive to *both* the sentence he was serving at the time of the assault *and* a sentence that had been imposed but that he was not yet serving on the date he was sentenced. The circuit court properly corrected this illegality, he argues, when it resentenced him to a term consecutive only to his sentence in case number 561.

Second, Mr. Williams highlights that the trial court recognized that his plea was not knowing and voluntary because his counsel had advised him that the sentence would be consecutive only to the sentence that he was serving at the time of the assault. Quoting *Cuffley v. State,* 416 Md. 568, 582 (2010), Mr. Williams contends that any ambiguity in the sentence must be resolved in his favor, and therefore, the court correctly resentenced him and imposed a lawful sentence.

## I.

### Illegal Sentence

### A.      Review of a Motion to Correct Illegal Sentence

Appellate courts review the legality of a sentence under Maryland Rule 4-345(a) without deference to the trial court. *Bailey v. State*, 464 Md. 685, 696 (2019). The Rule establishes that a court may correct an illegal sentence "at any time." Md. Rule 4-345(a).

"The rule is designed to correct 'inherently illegal' sentences, not sentences resulting from 'procedural errors.'" *State v. Bustillo*, ___Md. ___, No. 56, September

12

Term 2021, slip op. at 12 (filed Aug. 24, 2022) (quoting *Bailey*, 464 Md. at 697). We have explained that the language of Maryland Rule 4-345(a) "focuses narrowly on the sentence itself," and that caselaw applying the Rule "has drawn a dispositive distinction" between an illegal sentence whereby the "antecedent procedure was somehow legally flawed," and an illegal sentence "where the illegality is inherent in the sentence itself[.]" *Pitts v. State*, 250 Md. App. 496, 503-04 (2021). A sentence is deemed inherently illegal under Rule 4-345 if "there has either been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed[.]" *Rainey v. State*, 236 Md. App. 368, 374 (2018) (quoting *Chaney v. State*, 397 Md. 460, 466 (2007)). A sentence is not permitted, and is therefore illegal, if it "exceed[s] the limits imposed by law, be it statute or rule." *Mathews v. State*, 424 Md. 503, 514 (2012). *See also Walczak v. State*, 302 Md. 422, 433 (1985) (holding that a trial court imposed an illegal sentence when it "exceeded its statutory authority" by "sentencing [a defendant] to pay restitution to the victim of a crime of which he was not convicted").

## B.    Statutory Interpretation

We apply customary rules of statutory interpretation to ascertain the meaning of CR § 3-210(b). *State v. Bey*, 452 Md. 255, 265 (2017) ("This Court applies our normal rules of statutory construction in determining the legislative intent regarding the proper unit of prosecution and appropriate unit of punishment with respect to violations of any criminal statute." (quoting *Melton v. State*, 379 Md. 471, 478 (2004)). Above all else, we endeavor

13

to "ascertain and effectuate the real and actual intent of the Legislature." *Id.* (quoting *State v. Johnson*, 415 Md. 413, 421-22 (2010)). When interpreting a statute:

> [W]e begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. When the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia. Moreover, after determining a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objectives and purpose of the statute and Legislative intent.
>
> Even in instances when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.
>
> In addition to legislative history, we may and often must consider other external manifestations or persuasive evidence in order to ascertain the legislative purpose behind a statute. Specifically, [courts] should consider the context of the bill, including the title and function paragraphs, the amendments to the legislation as well as the bill request form. [Courts] may also analyze the statute's relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.
>
> In the event the language of a statute is ambiguous, we will often apply rules of statutory construction to ascertain the intent of the legislature. One such rule is to read the language of a statute in a way that will carry out its object and purpose. [Courts] will also consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result or one which is inconsistent with common sense.

*Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018) (cleaned up).

We begin, as always, with the plain language of the statute.

14

## C. The Plain Language of CR § 3-210

When interpreting the language of a statute, "[w]e give the words their 'natural and ordinary meaning.'" *Lane v. Supervisor of Assessments of Montgomery Cnty.*, 447 Md. 454, 466 (2016) (citation omitted). "When the plain meaning of the language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Maizel v. Comptroller of Treasury*, 250 Md. App. 360, 376 (2021) (citation omitted). If, however, the language of the statute is ambiguous, "then courts consider not only the literal and usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment under consideration." *75-80 Props., LLC. v. Rale, Inc.*, 470 Md. 598, 624 (2020) (quoting *Md. Nat'l Cap. Park & Planning Comm'n v. Anderson*, 395 Md. 172, 182 (2006)). Statutory language is ambiguous if there are "two or more reasonable alternative interpretations of the statute." *Price v. State*, 378 Md. 378, 387 (2003). When deciding whether a statute is ambiguous, we ask whether the statute's "plain meaning [is] evident" or whether it is "reasonably susceptible of two inconsistent but nonetheless rational meanings." *David N. v. St. Mary's Cnty. Dep't Social Servs.*, 198 Md. App. 173, 193 (2011).

Section 3-210 of the Criminal Law Article imposes special sentencing requirements when inmates are convicted of assaulting other inmates or corrections employees. The statute provides:

> (a) *In general.* An inmate convicted of assault under this subtitle on another inmate or on an employee of a State correctional facility, a local correctional

facility, or a sheriff's office, regardless of employment capacity, shall be sentenced under this section.

**(b)** *Consecutive sentence*. **A sentence imposed under this section shall be consecutive to any sentence that the inmate was serving at the time of the crime <u>or</u> that had been imposed but was not yet being served at the time of sentencing.**

(c) *Suspension of sentence prohibited*. A sentence imposed under this section may not be suspended.

(Bold emphasis added). The State and Mr. Williams predominantly disagree on the meaning of the word "or" in CR § 3-210(b). However, because the State challenges the trial court's authority to impose the underlying sentence modification, we first examine *whether* the statute's consecutive sentence requirements are mandatory before we consider how the word "or" in CR § 3-210(b) operates to describe *what* is required.

### i. *Mandatory sentencing requirement*

The Maryland General Assembly's use of the word *shall* in CR § 3-210(b) confirms that the statute's requirements for imposing a consecutive sentence are mandatory. The Court of Appeals and this Court have consistently held that the term "shall" ordinarily indicates a mandatory intent unless the context of the statute under examination suggests otherwise. *See, e.g.*, *Uthus v. Valley Mill Camp., Inc.*, 472 Md. 378, 394 (2021) ("Following this Court's long history of interpreting the statutory term 'may' as discretionary, as opposed to the mandatory term 'shall,' we conclude that the wrongful detainer statute is permissive and not mandatory."); *Dove v. State*, 415 Md. 727, 740 (2010) (After deciding that the admission of certain evidence that the State failed to disclose prior to trial was not harmless error, the Court of Appeals instructed that Rule 4-

16

342(d) made the remedy for a wrongful disclosure clear; "the sentencing judge 'shall postpone sentencing.'").

Our survey of Maryland decisional law reveals that the word "shall" is consistently assigned this mandatory meaning when it appears in a criminal sentencing statute. *See, e.g.*, *Harrison-Solomon v. State*, 442 Md. 254, 269 (2015) ("We have considered frequently the meaning of 'shall' as used in statutes. 'As this Court and the intermediate appellate court have reiterated on numerous occasions, the word 'shall' indicates the intent that a provision is mandatory.'" (quoting *Perez v. State*, 420 Md. 57, 63 (2011)); *Parker v. State*, 193 Md. App. 469, 501-02 (2010) ("As noted, C.J. § 12-702(a) provides that, when an appellate court remands for entry of a proper sentence, 'the lower court *shall* deduct from the term of the new sentence the time served by the defendant under the previous sentence[.]' The word 'shall' is ordinarily construed as mandatory." (emphasis in original)); *Burch v. State*, 358 Md. 278, 285 (2000) ("The clear, mandatory statutory language of Art. 27, § 413 leaves no discretion with the trial judge, who is bound by the jury's decision, to modify the penalty[.]").

Here, the word "shall" as it appears in CR § 3-210(b) can only be interpreted as a mandatory directive by the General Assembly.[6] Had the legislature intended to vest

---

[6] Over forty years ago, our predecessors observed in *Pope v. Secretary of Personnel*, 46 Md. App. 716, 717 (1980), that "[t]he word 'shall' has probably occupied the erudition of the Court of Appeals more than any other single term." Accordingly, we note that although "shall" is ordinarily presumed to be mandatory, especially in criminal sentencing statutes, in other contexts the word can sometimes be interpreted as directory and not mandatory. In *Pope*, the Court explained that one of the contextual factors relied upon to

(Continued)

sentencing judges with the discretion to impose consecutive sentences onto sentences of their choosing under CR § 3-210, it would have included a permissive term, such as "may," *see Uthus*, 472 Md. at 395, and there would have been no need to define the sentences in CR § 3-210(b) onto which a consecutive sentence must be tacked.

Viewing the statute as a whole only reinforces this mandatory construction. The statute specifies under CR § 3-210(c) that "[a] sentence imposed under this section may not be suspended." This requirement significantly curtails the "virtually boundless discretion" that sentencing judges are normally afforded when "devising an appropriate sentence." *Lopez v. State*, 458 Md. 164, 180 (2018) (quoting *Cruz-Quintanilla v. State*, 455 Md. 35, 40 (2017)). The invariable inclusion of these mandatory words and requirements persuades us that the legislature "meant what it said and said what is meant."

construe the use of "shall" as directory is where a statute provides no penalty for failure to act within a prescribed time. *Id.*

In *Rosales v. State*, the Court of Appeals explained that Maryland's 30-day appellate filing deadline, which provides, in relevant part, that a "notice of appeal *shall* be filed within 30 days," was in the nature of a claim processing rule, and not a jurisdictional rule. 463 Md. 552, 567-568 (2019). Accordingly, even though the rule employs the term "shall," the Court found that the 30-day deadline was subject to waiver or forfeiture. *Id.* at 568*; see also Cnty. Council of Prince George's Cnty. v. Palmer Rd. Landfill, Inc.*, 247 Md. App. 403, 420-23 (2020) (explaining that a provision of the Prince George's County Code, which includes the word "shall," is a "non-jurisdictional time prescription, subject to waiver and forfeiture."). *See also State v. Bustillo*, ___Md. ___, No. 56, September Term 2021, slip op. at 1, 15-16, 20 (filed Aug. 24, 2022) (The Court of Appeals instructed that "[t]he use of the mandatory word 'shall' in Rule 4-346(a) means that the sentencing court is *required* to advise the defendant of the conditions and duration of probation"; however, after examining "the totality of the circumstances and the purpose of the rule[,]" the Court held that the trial court's noncompliance with the rule—in failing to verbally advise the defendant of the conditions and duration of probation—did not render his sentence illegal.).

18

*Lawrence v. State*, 475 Md. 384, 406 (2021) (quoting *Peterson v. State*, 467 Md. 713, 727 (2020)).

Our interpretation of the plain language of § 3-210(b) also aligns with CR § 3-210's role in the larger statutory scheme. CR § 3-210 does not articulate a standalone assault modality, nor does it impose a mandatory, or even suggest a permissible, sentencing range.[7] Instead, CR § 3-210 imposes *additional sentencing requirements* for inmates convicted of assaulting corrections employees or other inmates. It does so by requiring a mandatory consecutive sentence when an inmate is convicted of first- or second-degree assault under either CR § 3-202 or CR § 3-203. While there are numerous enhanced sentencing requirements that the General Assembly could have utilized, as we will highlight further in our discussion, every iteration of the statute has required that a sentence be "consecutive" and may not be suspended. Given its niche role in Maryland's assault statutory scheme, an interpretation of CR § 3-210 that renders its consecutive sentence requirement discretionary would render the entire statute meaningless, as, in practice, the sentencing judge would just be imposing a sentence under CR § 3-202 or CR § 3-203.

---

[7] Title 3, subtitle 3 of the Maryland Code, Criminal Law Article sets out two categories of assault. Section 3-202 articulates the elements of first-degree assault and provides two modalities for committing the crime. It provides that "[a] person may not intentionally cause or attempt to cause serious physical injury to another" and "may not commit an assault with a firearm." A person who is convicted of violating CR § 3-202 "is subject to imprisonment not exceeding 25 years." *Id.* at (c). Criminal Law Article § 3-203 defines second-degree assault, and provides, among other things, that "[a] person may not commit an assault." *Id.* at (a). A person convicted of violating this provision "is guilty of the misdemeanor of assault in the second degree and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $2,500 or both." *Id.* at (b).

### ii. The meaning of "or"

The word "or" "generally has a disjunctive meaning, that is, the word is used to indicate 'an alternative between unlike things, states, or actions[.]'" *Gilroy v. SVR Riva Annapolis, LLC*, 234 Md. App. 104, 111 (2017), *aff'd*, 459 Md. 632 (2018) (quoting Webster's Third New International Dictionary Unabridged 1585 (1986)). However, this rule "is not absolute," *id.*, and courts look to how the word "or" is used within a specific statutory scheme to determine its meaning, *Balt. City Det. Ctr. v. Foy*, 461 Md. 627, 642 n.7 (2018). Indeed, "Maryland Courts sometimes give a conjunctive, rather than a disjunctive meaning to 'or,' when 'the context reasonably supports the inference that such a construction is necessary to effectuate the intent of the Legislature.'" *Gilroy*, 234 Md. App. at 111-12 (quoting *David N. v. St. Mary's Cnty. Dep't of Soc. Servs.*, 198 Md. App. 173, 197 (2011)).

Consequently, to ascertain the meaning of "or" as it appears in CR § 3-210(b), we must consider not just the definition of the word, but also the context in which the word is used. The word "or" in CR § 3-210(b) is preceded by the declaration that a sentence imposed under CR § 3-210 "*shall* be consecutive to *any* sentence . . . ." We view this language as commanding that a sentence imposed under CR § 3-210 *must* be consecutive to *every* sentence described thereafter. *See, e.g.*, *Richmond v. State*, 326 Md. 257, 265 (1992) ("We have previously construed the use of the word 'any' in a criminal statute to mean 'every[.]'"); *see also Tribbitt v. State*, 403 Md. 638, 650 (2008) (Construing the term "any" as used in statute to mean "'any' act that involves sexual molestation or exploitation of a child" and could not "be restricted to only acts made criminal elsewhere.").

20

In *Payne v. State*, we distinguished the General Assembly's use of the articles "a" and "an" from its use of the word "any" in two criminal statutes, CR § 11-207 and CR § 11-208,[8] that prohibit among other things, the possession of child pornography. 243 Md. App. 465, 487 (2019). Mr. Payne was convicted of five counts of possession of child pornography under CR § 11-208, and the circuit court imposed five separate sentences. *Id.* at 483. On appeal, he argued that the circuit court erred by imposing separate sentences, as the illegal images were "found on the same device at the same time and place" and should therefore "be considered a single act." *Id.* To lend context to CR § 11-208, which prohibited the possession of visual representations of a child under 16 engaged in certain sexual acts, we looked to, among other things, the broader child pornography statute, CR § 11-207. *Id.* at 487. We noted that in CR § 11-207 the General Assembly used both the articles "a" and "an" and the word "any." *Id.* at 487-88. Generally, courts ascribe the articles "a" and "an" a plural meaning, such as "'any' and as not restricted to just one"; however, given that the General Assembly decided to use "a" and "an" as well as the word "any," we looked to the context of the statutory scheme to glean the intended meaning of the words. *Id.* at 486 (quoting *Evans v. State*, 396 Md. 256, 341 (2006)). Our interpretation of the language of CR § 11-207(a)(1)-(4) led us to the conclusion that the "drafters were focused on the individual victims in the singular, *e.g.*, 'a minor' engaged as 'a subject.'" *Id.* at 487. In reaching this conclusion, we noted that the word "any" had a different, but

---

[8] As noted in *Payne*, 243 Md. App. at 471, after Mr. Payne was charged, CR § 11-208 was amended in 2019 and, we note, was amended again in 2021. 2019 Md. Laws, ch. 325 (H.B. 1027); 2021 Md. Laws, ch. 393 (H.B. 180). CR § 11-207 also was amended by the same acts in 2019 and 2021.

"equally apparent" meaning compared to that of "a" and "an": "*[T]he use of the term 'any' was a qualifier for what kinds of matters were proscribed intending it to be inclusive of the listed items, statutorily defined as 'matter.'*" *Id.* at 487-88 (emphasis added). Based on these differing meanings, and a comparison of the language in CR § 11-207 and CR § 11-208, we concluded that "the Legislature intended" that "a" and "an" be given a singular meaning and that "each instance of possession of child pornography, as proscribed by CR § 11-208, is a discrete and independent offense, and, therefore, subject to separate punishment." *Id.* at 488, 507.

Returning to the statute before us, we perceive that by requiring that a sentence imposed under CR § 3-210(b) "shall" be consecutive to "any" eligible sentence, the General Assembly intended that the sentence be imposed to "every" eligible sentence. To assign a disjunctive meaning to the word "or" in CR § 3-210(b) would undermine this intent, as it would, plainly, allow sentencing judges to impose sentences that were consecutive to *some*, but not *every*, eligible sentence.

Furthermore, as the State points out in its brief, the General Assembly could not have used "and" in place of "or" because that would have required that a sentence imposed under CR § 3-210(b) be consecutive to a single sentence that was simultaneously one "that the inmate was serving at the time of the crime" and one "that had been imposed but was not yet being served at the time of sentencing"—a legal impossibility.

Considering, in context, the mandatory terms of CR § 3-210 together with the all-encompassing meaning of the word "any" preceding the sentences described in CR § 3-210(b), the only logical construction of the word "or" in CR § 3-210(b) is that it operates

22

as an inclusive conjunction. We hold, therefore, that the language of the statute requires that a sentence imposed under CR § 3-210 "shall" be consecutive to the last to expire of "any" sentence that the inmate was serving at the time of the assault as well as "any" sentence that had been imposed, but that the inmate was not yet serving, at the time of sentencing.

Because Mr. Williams's alternative interpretation of CR § 3-210(b) is not reasonable, *see Price*, 378 Md. at 387, we conclude that the language of the statute is unambiguous. Still, recognizing that our reading of the word "or" as an inclusive conjunction is contrary to its more common use as a disjunction, we turn to examine the relevant statutory and legislative history.[9]

### D. Statutory History

The General Assembly first enacted enhanced sentencing requirements for inmates convicted of assaulting corrections officials in 1975. *See* 1975 Md. Laws, ch. 277 (S.B. 113). At the time, the only sentencing limitation for common assault was the United States

---

[9] Recently, we re-emphasized that "[s]tatutory history is 'quite separate from legislative history.'" *Gateway Terry, LLC v. Prince George's Cnty.*, 253 Md. App. 457, 471 (2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 256 (2011)). The two exercises differ as:

> Legislative history consists of the hearings, committee reports, and debate leading up to the enactment in question. By contrast, statutory history consists of the statutes repealed or amended by the statute under consideration. Those statutes form part of the context of the statute under consideration and can properly be presumed to have been before all the members of the legislature when they voted.

*Id.* (cleaned up).

23

Constitution's prohibition against cruel and unusual punishment. *See Brown v. State*, 38 Md. App. 192, 195 (1977). The statute, codified as Article 27, § 11E of the Maryland Code, singled out inmates who committed assaults on corrections officials as follows:

> Every inmate convicted of assault on a Division of Correction employee, regardless of employment capacity, **shall be sentenced to a sentence to run consecutive to the sentence under which the inmate was originally confined** and the sentence may not be suspended.

Maryland Code (1957, 1968 Repl. Vol., 1975 Cum. Supp), Article 27, § 11E (emphasis added). In 1976, the General Assembly expanded the scope of the statute by including within its reach employees of "the Patuxent Institution" in addition to employees of the "Division of Correction." *See* 1976 Md. Laws, ch. 790 (H.B. 1559). The statute was again amended in 1979 to include employees of the "Baltimore City Jail" as well as employees of "any county jail or detention center." 1979 Md. Laws, ch. 650 (H.B. 1545). None of these amendments altered the statute's requirement that a sentence be "consecutive" and "may not be suspended."

Article 27, § 11E was amended again in 1984. The General Assembly replaced the language "sentence to run consecutive to the sentence under which the inmate was originally confined" with "shall run consecutively to any sentence that was being served at the time of the assault, *or that had been imposed but was not yet being served at the time of the sentencing.*" *See* 1984 Md. Laws, ch. 557 (S.B. 713) (emphasis added); Maryland Code (1957, 1981 Repl. Vol., 1984 Cum. Supp.), Art. 27, §11E. This change was significant, as it ensured that an inmate's sentence would run consecutive to the last to expire of every sentence that the inmate was serving at the time of the assault as well as

24

every sentence that had been imposed but that the inmate was not yet serving at the time of sentencing. The statute was also stylistically altered and its language divided into three subsections. Subsection (a) defined the types of assaults eligible for the enhanced penalty, subsection (b) articulated the statute's "consecutive sentence" requirement, and subsection (c) articulated the statute's prohibition on suspended sentences.

In 1985, Article 27, § 11(a) was expanded to include assaults "on another inmate." This addition ensured that inmates convicted of assaulting other inmates would face the same penalties as inmates convicted of assaulting corrections employees.[10]  Then in 1996, the General Assembly overhauled Maryland's "laws concerning crimes involving physical injury and threatened injury." 1996 Md. Laws, ch. 632 (H.B. 749). Despite major changes to the overall assault statutory scheme, the General Assembly made only minor changes to the inmate assault statute. It added the words "in any degree" to subsection (a) to clarify that "[e]very inmate convicted of assault in any degree on another inmate or on an employee of the Division of Correction, the Patuxent Institute, the Baltimore City Detention Center, or any county jail or detention center" was subject to the statute's

---

[10] As amended, the statute provided that:

> Every inmate convicted of assault **on another inmate** or an employee of the Division of Correction, the Patuxent Institution, the Baltimore City Jail, or any county jail or detention center, regardless of employment capacity, shall be sentenced for the crime of assault under this section.

Md. Code (1957, 1981 Repl. Vol., 1986 Cum. Supp.), Article 27, § 11(a) (emphasis added). The statute was slightly amended again in 1991 to change the reference to the "Baltimore City Jail" to "Baltimore City Detention Center." Maryland Code (1957, 1991 Repl. Vol., 1991 Supp.), Art. 27, § 11E.

sentencing requirements. 1996 Md. Laws, ch. 632 (H.B. 749) (emphasis in original). The statute was also recodified at Article 27, § 12A-6. Md. Code (1957, 1996 Repl. Vol.), Art. 27, § 12A-6.

Several years later, in 1999, the General Assembly made two substantive changes to the inmate assault sentencing statute. First, subsection (a) was expanded to include employees of any Sheriff's Office. Second, the scope of the statute was expanded to include an "assault with bodily fluids" modality.[11] *See* 1999 Md. Laws, ch. 345 (S.B. 377). Correspondingly, an inmate convicted of assault with bodily fluids had to serve a sentence "consecutive to any sentence that was being served at the time of the offense, or that had been imposed but was not yet being served at the time of sentencing" and that sentence could "not be suspended." Md. Code (1957, 1996 Repl. Vol., 1999 Supp.), Art 27, § 12A-6.

The General Assembly codified a new Criminal Law Article to "reorganize and

---

[11] The assault with bodily fluids modality provided that:

An inmate may not maliciously cause or attempt to cause any employee listed in subsection (a) of this section to come into contact with:
    (i) Seminal fluid, urine, or feces; or
    (ii) Blood, provided that the contact with the blood is not the result of physical injury resulting from body contact between the inmate and the employee.
    (2) An inmate who violates paragraph (1) of this subsection is guilty of a misdemeanor and on conviction is subject to a fine of not more than $2,500 or imprisonment for not more than 10 years or both.

Maryland Code (1957, 1996 Repl. Vol., 1999 Supp.), Art 27, § 12A-6.

simplify the criminal code" in 2002. *Allen v. State*, 402 Md. 59, 70 (2007).[12] Article 27, § 12A-6, was recodified "without substantive change." Revisor's Notes, Criminal Law §§ 3-205; 3-210.[13] The form of the statute was, however, changed. The "assault with bodily fluids" modality, which was added in 1999, was separated from the rest of the inmate assault sentencing statute and was renamed "Prison employee—Contact with bodily fluid."[14] The balance of former Article 27, § 12A-6 was codified at CR § 3-210. The statute has not been amended since its 2002 adaption.

### E. Legislative History

Our interpretation of CR § 3-210 is further confirmed by information contained in the bill files for 1975 S.B. 113, the original inmate assault sentencing bill; 1984 S.B. 713, which added the two types of sentences for which a judge must sentence an inmate consecutive to; and 1985 H.B. 1002, which expanded the scope of the statute to include assaults committed on other inmates. The original text of 1975 S.B. 113, proposed "a mandatory two year minimum sentence for conviction of assault on an employee." *See* bill

---

[12] While many of the criminal law statutes were altered, the changes were "presumed to be for the purpose of clarity rather than change of meaning." *Allen*, 402 Md. at 70 (quoting General Revisor's Note to Article, Md. Code Crim. Law. Art. (2002)).

[13] A revisor's note is "an expression of legislative intent on which we may rely." *Gateway Terry, LLC*, 253 Md. App. at 472.

[14] The "Prison employee—Contact with bodily fluid" modality was codified at CR § 3-205. While the offense was separated from the inmate assault sentencing section, its sentencing requirement remains identical to the requirements in CR § 3-210(b) and (c) that inmates be sentenced to terms "consecutive to any sentence that the inmate was serving at the time of the crime or that had been imposed but was not yet being served at the time of sentencing" and that the sentence "may not be suspended." CR § 3-205(c), (d).

27

file for 1975 S.B. 113 at 1. The Senate Judicial Proceedings Committee amended this language, removing the mandatory two-year language in favor of a sentence "consecutive to the sentence under which the inmate was originally confined" which "may not be suspended." *Id.* at 5. We glean from these edits that the legislators intended that inmates convicted under the statute face additional punishment, while ceding to trial judges the discretion to determine the length of the sentence.

In 1984, the General Assembly passed S.B. 0713, which expanded the classes of sentences to which a sentence for the crime of assaulting a corrections employee must run consecutively. *See* bill file for 1984 S.B. 713, at 15. To achieve this end, the General Assembly amended the requirement that inmates serve a term consecutive to the sentence for which the inmate was "originally confined," to require that an inmate convicted of assaulting an employee serve a sentence consecutive to "any sentence which was being served at the time of the assault, or any sentence which had been imposed but was not yet being served at the time of sentencing on the assault[.]" *Id.* at 15. By doing so, the legislature intended to:

> mandate that an inmate convicted of assaulting any correctional employee shall be sentenced for the assault and shall serve the sentence for assault consecutive to the sentence that was being served at the time of the assault, or that had been imposed but was not yet being served at the time of sentencing.

Committee Report, Senate Judicial Proceedings Committee, bill file for 1984 S.B. 713, at 39. The purpose of imposing this harsher punishment was "to provide protection for correctional employees." *Id.* A fiscal note, prepared by the Department of Fiscal Services, stated that 1984 S.B. 713 "broadens the conditions under which an inmate convicted of

28

assault on a corrections employee will be mandatorily sentenced to a consecutive term to include any assault occurring after the original sentence was imposed (even if the sentence was not yet being served)." *See* Dept. of Fin. Servs. Fiscal Note, bill file for 1984 S.B. 713, at 17.

The next year, the General Assembly passed 1985 H.B. 1002, which expanded the scope of the statute to include assaults committed by inmates on other inmates. The bill specified that it "provid[ed] for a consecutive sentence for an inmate of the Division of Correction or of other certain detention centers and jails who is convicted of assaulting another inmate." 1985 Md. Laws, ch. 391 (H.B. 1002), bill file for 1985 H.B. 1002. The legislative purpose of the bill was to "place the sentencing of an inmate for assaulting an employee of the Department of Correction on the same footing as sentencing for assaulting another inmate." Committee Report, Senate Judicial Proceedings Committee, bill file for 1985 H.B. 1002 at 6-7. The bill's sponsor, then Delegate Nathaniel T. Oaks,[15] made a note, in shorthand, that 1985 H.B. 1002 "would deter attacks since [it] would make [a] sentence run conseq. not concur." *See* Hearing Notes in legislative bill file for 1985 House Bill 1002, at 3.

### F.     The Kennedy Case

The State relies heavily on *State v. Kennedy* in which the Court of Appeals interpreted a statute with a similar "consecutive sentence" requirement. 320 Md. 749, 751-56 (1990). Although *Kennedy* is instructive, its bearing on this case is moderated by the

---

[15] Delegate Nathaniel Oaks also served as member of the Maryland Senate from 2017 to 2018.

29

fact that the *Kennedy* court was presented with a materially different factual scenario and, therefore, did not examine the same issue presented in this appeal.

In *Kennedy*, the Court was asked to interpret Maryland's escape statute, then codified at Art. 27, § 139 of the Maryland Code. *Id.* at 751. The statute provided that an inmate who escapes from a State penitentiary or jail is "guilty of a felony and on conviction . . . is subject to confinement in the State penitentiary or a jail or house of correction for an *additional period* not exceeding 10 years." *Id.* (emphasis added). It also mandated that a "sentence imposed under [the] subsection *shall be consecutive to any sentence which was being served at the time of the escape, or any sentence which had been imposed but was not yet being served at the time of sentencing on the escape*" and that the sentence "*may not be suspended*." *Id.* (emphasis added).

While Mr. Kennedy was serving an 18-month sentence in a work release program he failed to return to the detention center after work and was charged and convicted of escape. *Id.* At sentencing, Mr. Kennedy's counsel sought a lenient sentence, arguing that his escape was out of "concern for his young daughter who was seriously ill and required surgery." *Id.* The sentencing judge "deferred entry of judgment and placed Kennedy on five years' supervised probation." *Id.* The State appealed, and this Court affirmed the sentence. *Id.* at 752.

The Court of Appeals reversed. *Id.* It found that the language of the statute was plain and unambiguous and that the General Assembly, in passing the bill, "intended to single out escapees from other criminals. It did not intend to forgive an escapee's felonious act by awarding him probation before judgment as punishment[.]" *Id*. at 752-53. This

30

interpretation was consistent with the legislative history, as the General Assembly, since 1837, had prescribed that "one convicted of escape was to serve an *additional* sentence to the one already being served for the underlying offense." *Id.* at 753 (emphasis in original). The legislative aim of ensuring that inmates convicted of escape serve "an additional, consecutive, unsuspended jail sentence" would be thwarted if the statute was interpreted to allow the "benign disposition of probation before judgment." *Id.* at 754-55. The Court, therefore, held that probation before judgment was not a permitted sentence under Art. 27, § 139 and, correspondingly, that the circuit court erred by imposing such a sentence. *Id.*

In contrast to this appeal, the *Kennedy* Court did not have to consider whether Mr. Kennedy's escape conviction should be imposed consecutive to a sentence that he was not yet serving, because Mr. Kennedy had only one sentence that he was serving at the time that he committed the escape. 320 Md. at 751. In *Kennedy*, the Court held that under the escape statute, the sentencing court should have imposed "[a] sentence of incarceration additional to the one [Mr. Kennedy] was serving at the time of his escape[.]" *Id*. at 756. At the time of Mr. Williams's sentencing, however, he was still serving the sentence for which he was confined at the time he assaulted the other inmate, *and*, an additional sentence had been imposed for a separate crime that took place years earlier. Mr. Williams was not yet serving time for the second sentence because it was imposed consecutive to the time he was already serving at the time of the assault.

### *Conclusion*

We conclude, based on our review of the plain language and statutory construction of CR § 3-210(b), as confirmed by the relevant statutory and legislative history, that the

31

General Assembly intended that inmates convicted of assaulting corrections employees or other inmates *be required* to serve consecutive, non-suspended, sentences as a deterrent to committing additional crimes while incarcerated. Applying CR § 3-210(b) as Mr. Williams urges in this case would run contrary to the intent of the General Assembly that an inmate serve additional time for assaults committed while incarcerated. The statute requires that his sentence for assaulting another inmate run consecutive to the sentence that he received in case number 1435, as it was imposed prior to his sentencing hearing, and will be the last sentence to expire. If his sentence under CR § 3-210(b) were to run consecutive only to the sentence that he was already serving in case number 561, then it would run concurrently to his sentence in case number 1435, and he would not serve any additional time for the crime. *See Kennedy*, 320 Md. at 753 ("The sentence was therefore tacked onto the original sentence, giving the escapee *more time in prison*[.]" (emphasis added)).

Because Mr. Williams's modified sentence was consecutive only to his sentence in case number 561, it is not permitted by CR § 3-210(b), and is, therefore, illegal. *Id.* at 756 (Because "[a] sentence of incarceration additional to the one he was serving at the time of the escape is the only legal alternative" under the escape statute, a sentence of probation before judgment "was not that mandated by law."). As the State points out, the trial court modified Mr. Williams's one year sentence so that it runs concurrently to his 12-year sentence in case number 1435, having the practical effect that he will not serve any time for the crime committed in violation of CR § 3-210. This illegality must be corrected, as it is not the product of "a procedural illegality or trial error antecedent to the imposition of

32

sentence" but rather, "inhere[s] in the sentence itself." *Carlini v. State*, 215 Md. App. 415, 425-26 (2013); *see* Maryland Rule 4-345(a).

Because we have determined that Mr. Williams's sentence is illegal, his sentence must be vacated. *See State v. Crowley*, 455 Md. 52, 66 (2017) ("Courts do not possess the authority to impose a sentence that does not comport with a legislatively-mandated sentence[.]" (citing *Cathcart v. State*, 397 Md. 320, 325 (2007)). Although we would normally remand an illegal sentence to the trial court for resentencing, in this case, we must take a step further back, as both parties in this appeal acknowledge that Mr. Williams's guilty plea was not knowing and voluntary.

## II.

### Knowing and Voluntary Plea under Maryland Rule 4-242

The transcript from Mr. Williams's plea and sentencing hearing demonstrates that he was not advised that the sentence for his assault conviction would be imposed consecutive to the last to expire of both of his previous sentences. Guilty pleas that are not "equally voluntary and knowing" are "void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). On remand, to ensure that Mr. Williams receives the full legal benefit of his plea bargain, he will have the option of: (1) leaving the guilty plea in place, and accepting the State's original offer of one year and one day of incarceration, to be served consecutive to the last sentence to expire of all outstanding and unserved sentences; or (2) withdrawing his guilty plea, with the understanding that the State is free to try him on all four of the original charges, or to negotiate another plea agreement. We explain.

Maryland Rule 4-242 governs plea agreements and requires, among other things:

The court may not accept a plea of guilty, including a conditional plea of guilty, until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

Md. Rule 4-242(c). The terms of a plea agreement "are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject." *Cuffley v. State*, 416 Md. 568, 579 (2010). The terms of a guilty plea "must be made 'express' and 'clearly agreed upon *before* the guilty plea is accepted.'" *Id.* (quoting *Solorzano v. State*, 397 Md. 661, 672 (2007)).

Our evaluation of plea bargains is guided by "[d]ue process concerns for fairness and the adequacy of procedural safeguards." *Solorzano*, 397 Md. at 668. These principles require that both prosecutors and trial judges "adhere to their part of the bargain." *Cuffley*, 416 Md. at 580. Therefore, once a plea is accepted, a court is "required to impose the agreed upon sentence, assuming that all the conditions imposed upon the defendant were fulfilled." *Tweedy v. State*, 380 Md. 475, 485 (2004); *see also State v. Poole*, 321 Md. 482, 496 (1991) ("[F]airness and equity required the trial judge to be held to his bargain, vis-a-vis sentencing.").

When sentencing judges bind themselves to plea agreements and, subsequently, fail to adhere to them, the resulting sentences are illegal. In *Cuffley*, the defendant agreed to plead guilty to robbery and, in exchange, the State recommended "a sentence within the guidelines," which it calculated to be "four to eight years." 416 Md. at 573. The sentencing judge, after hearing a recitation of the facts and finding that the plea was knowing and

34

voluntary, accepted the plea. *Id.* at 574. Several months later, at sentencing, the judge imposed a fifteen-year sentence, with all but six years suspended. *Id.*

Years later, Mr. Cuffley filed a motion to correct an illegal sentence arguing that the sentence violated the plea agreement because he was not aware that he could "receive suspended time above the eight-year sentencing cap." *Id.* at 574-75. The court denied the motion and reasoned that "suspended time and conditions of probation are within [the court's] discretion" and that it was "quite confident" that Mr. Cuffley was advised that the sentence may have suspended time. *Id.* at 576 (alteration in original). The court, therefore, denied his motion, and this Court affirmed. *Id.*

The Court of Appeals reversed. *Id.* at 586. The Court observed that Maryland "Rule 4-243 expressly states that the terms of the plea agreement are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject." *Id.* at 579. The Court clarified that sentencing judges must strictly comply with the provisions of Maryland Rule 4-243. *Id.* at 582. Questions that arise after a plea agreement is accepted are to be resolved based on an objective test, which looks to ascertain "what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding." *Id.* at 582.

In addition to holding that the sentencing court erred by reviewing extrinsic evidence at the post sentencing hearing, the Court held that, because Mr. Cuffley was told that he would receive a sentence between four to eight years, "a reasonable lay person in [his] position could understand the court's comment to mean that the court reserved the

35

right to suspend a part of what, at most, would be an eight-year sentence and impose a period of probation accompanied by conditions." *Id.* at 585. The Court ruled that Mr. Cuffley's sentence was illegal, and that he was entitled to have the ambiguity in the plea agreement resolved in his favor. *Id.* at 585-86. Therefore, the sentence was vacated, and the case was remanded for re-sentencing. *Id.* at 586. On remand, Mr. Cuffley was entitled to "obtain redress by electing either to have his guilty plea vacated or to leave it standing and have the agreement enforced at resentencing." *Id.* at 580-81 (quoting *State v. Brockman*, 277 Md. 687, 694 (1976)).

Resolving plea bargain ambiguities in a defendant's favor becomes more difficult, however, when a bargained-for sentence cannot be imposed. Our predecessors addressed this issue in *Johnson v. State*, 40 Md. App. 591 (1978). There, while on parole in the Commonwealth of Pennsylvania, Mr. Johnson pleaded guilty to two counts of storehouse breaking in Maryland. *Id.* at 592. In exchange for this plea, the State agreed that Mr. Johnson would be sentenced to a term concurrent to his outstanding sentences in Pennsylvania. *Id.* at 593-96. This was important to Mr. Johnson, as he expected "to have his Pennsylvania parole revoked and to be reincarcerated in that state." *Id.* at 592. Although the sentencing court accepted the agreement, the bargain could not be effectuated, as the Pennsylvania authorities "were unaware of [Mr. Johnson's] conviction and sentencing in Maryland" and did not revoke Mr. Johnson's parole or reincarcerate him in Pennsylvania. *Id.* at 596-97.

On appeal, the Court noted that "[i]t is entirely conceivable that Pennsylvania could either wait until the Maryland time has been served before reimposing the balance of [Mr.

36

Johnson's] sentences or reimpose those sentences so as to run consecutively to those now being served in Maryland." *Id.* at 597. Therefore, the Court held that Mr. Johnson was being denied "an essential element of the bargain, to wit: his immediate return to Pennsylvania." *Id.* In attempting to fashion an equitable remedy, the Court noted that "[o]rdinarily, where a plea agreement has been breached or the accused does not receive a benefit clearly contemplated as an inducement for his plea, he will be permitted the opportunity to withdraw his plea or, under the appropriate circumstances, to seek specific enforcement of the plea agreement." *Id.* Mr. Johnson requested specific performance of his plea agreement; however, this was not possible as the courts of Maryland could not compel Pennsylvania authorities to act on Mr. Johnson's case. *Id.* at 597-98. Because Mr. Johnson did not seek to withdraw his guilty plea, we reasoned that the only practical solution was to offer him a choice:

> 1. He may elect to leave his guilty plea undisturbed and accept the sentences imposed, in which case, the trial court should request the State's Attorney for Baltimore County to make all reasonable efforts to notify the proper Pennsylvania authorities of [Mr. Johnson's] situation and to cooperate with those authorities in return of appellant to Pennsylvania should they desire to take action.

> 2. He may withdraw his plea of guilty and go to trial on the original charges or enter into a workable plea agreement with the State.

*Id.* at 599.

The Court of Appeals took a similar approach in *State v. Parker*, 334 Md. 576 (1994). There, Mr. Parker was facing federal and state charges stemming from a robbery-homicide incident. *Id.* at 581. In state court, he and the State struck a plea bargain. *Id.* In exchange for Mr. Parker pleading guilty to second-degree murder, the State promised,

37

among other things, that Mr. Parker would receive a 20-year sentence which he would serve in a federal institution. *Id.* (citation omitted). The sentencing judge accepted this agreement and sentenced Mr. Parker to a 20-year term of imprisonment, consecutive to his federal sentence, with the understanding that Mr. Parker would serve his sentence "in the federal institution." *Id.* at 581-82.

Several years after Mr. Parker was sentenced, he was paroled on his federal sentence and "remanded to the custody of the Maryland Department of Corrections to complete the balance of his Maryland sentence." *Id.* at 582. Mr. Parker filed a petition for post-conviction relief, arguing that the terms of his plea-agreement required that he be released from Maryland Department of Corrections custody, as "the sentencing judge necessarily intended that when [Mr.] Parker was paroled upon his federal sentence he would thereby be paroled from his Maryland sentence." *Id.* at 583. The post-conviction court agreed and ordered that Mr. Parker be released from the Division of Correction. *Id.* This Court affirmed. *Id.* at 583-84.

The Court of Appeals reversed and held that Mr. Parker must serve the balance of his Maryland sentence. *Id.* at 595-96. Given that Mr. Parker was under the false impression that the sentencing judge could designate the institution where he would serve his sentence, the Court had to "decide what remedy is appropriate under the circumstances." *Id.* at 597. An appropriate remedy, the Court reasoned, would ensure that Mr. Parker received "what is reasonably due under the circumstances." *Id.* at 602. Granting Mr. Parker unconditional release was not appropriate, as it would result in the State failing to receive "the full benefit of its bargain," as it and Mr. Parker had agreed on a 20-year term. *Id.* at 603. The Court,

38

citing *Rojas v. State*, 52 Md. App. 440 (1982), reasoned that in some cases "the fairest remedy . . . would be to rescind the entire plea agreement, thus placing both parties in their original positions[.]" *Id.* at 605. However, the Court noted that, as in *Johnson*, in certain circumstances, "the only practical solution" is to offer a defendant "a choice between two alternatives: (1) leave the guilty plea undisturbed and accept the sentences imposed; or (2) withdraw the guilty plea and go to trial on the original charges." *Id.* at 606 (citing *Johnson*, 40 Md. App. at 599).

Given that Mr. Parker had "already provided information, testified, and served eleven years of his sentence" by the time the unenforceable nature of his plea agreement was recognized, rescission of the plea agreement would not return the parties to their original positions. *Id.* at 607. Under these circumstances, the Court held that "the only practical and fair solution, both for [Mr.] Parker and the public" was to offer Mr. Parker a choice to either:

> (1) . . . elect to leave his guilty plea in place, and when he is released on parole from his federal sentence, he must be returned to the custody of the Division of Correction to serve the balance of his state sentence; or (2) he may withdraw the guilty plea, with the understanding that the State is free to try him on the original charges, including first degree murder, or to negotiate another plea agreement.

*Id.*

More recently, in *State v. Smoot*, we addressed the appropriate remedy for a sentence not permitted by law. 200 Md. App. 159 (2011). Mr. Smoot was charged with possession of a regulated firearm with a disqualifying crime, which mandated a sentence of imprisonment for not less than five years. *Id.* at 162-64. Despite this mandatory

39

requirement, after "'some fairly extensive conversations in chambers' concerning the case," the judge indicated that if Mr. Smoot pleaded guilty, he would grant him probation before judgment. *Id.* at 162-63. Mr. Smoot obliged, and the court imposed such a sentence. *Id.* at 163.

The State appealed, arguing that probation before judgment was not a "permissible penalty" for possession of a regulated firearm with a disqualifying crime. *Id.* at 164. We agreed, noting that we could not affirm Mr. Smoot's probation before judgment, as it was not permitted by law. *Id.* at 173-75. Given that there was no mechanism to ensure that Mr. Smoot "obtain[ed] the benefit of the bargain under which he entered his guilty plea and waived his trial rights," as the probation before judgment term was precisely what made the plea bargain unenforceable, we held that the proper remedy was to vacate the plea and remand Mr. Smoot's case for a new trial. *Id.* at 175.

We believe the lessons of *Cuffley*, *Johnson*, *Parker*, and *Smoot,* apply with acute force to the case before us. Before Mr. Williams accepted the plea bargain, he was advised by his counsel that the sentence for assaulting another inmate would be imposed consecutive to "*the 25 years that you received from Judge Eaves ending in [0561]*." This statement was not corrected until after the court accepted Mr. Williams's plea. It is apparent that a "reasonable lay person" in Mr. Williams's position "would not understand that the court could impose the sentence that the court did," namely a sentence consecutive to Mr. Williams's sentences in case number 561 *and* case number 1435. *Cuffley*, 416 Md. at 585. Therefore, we hold that the plea was not knowing and voluntary. With this understanding, we turn to the appropriate remedy.

40

Mr. Williams seeks specific performance of the plea agreement as he understood it at the time of sentencing, but our courts lack the authority to offer such a remedy. As discussed above, imposing a sentence consecutive only to Mr. Williams's sentence in case number 561 results in the imposition of an illegal sentence, which Mr. Williams "cannot consent to." *Crawley*, 455 Md. 52, 67 (2017) ("[A] defendant cannot consent to an illegal sentence." (citation omitted)). Under the circumstances, we hold that fairness dictates that Mr. Williams be given the same choice offered in *Johnson* and *Parker*. On remand, he will have the choice of: (1) leaving the guilty plea in place and accepting the State's original offer of one year and one day of incarceration, to be served consecutive to the last sentence to expire of all outstanding and unserved sentences; or (2) withdrawing his guilty plea, with the understanding that the State is free to try him on all four of the original charges, or to negotiate another plea agreement. Should he choose to withdraw the agreement, he "and the [S]tate return to 'square one.' They both begin again with a clean slate." *Sweetwine v. State*, 42 Md. App. 1,4 (1979), *aff'd*, 288 Md. 199 (1980) (footnotes omitted).

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED AND SENTENCE VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE HALF BY APPELLEE AND ONE HALF BY HARFORD COUNTY.**